# CASES

## IN THE

# SUPREME COURT OF ALABAMA.

## DECEMBER TERM, 1877.

## Simpson *v.* The State.

### *Assault with Intent to Murder.*

1. *The measure of evidence necessary to sustain indictments.*—Indictments under the Code are abridged in form, and contain legal conclusions rather than the facts which support them, but the nature of the offence is not changed, and the conclusions stated must be sustained by the same measure of evidence, which would be necessary if the facts on which they depend were fully expressed.

2. *The intent must be proven as a fact.*—On the trial of an indictment for an assault with intent to murder, the intent can not be implied as matter of law, and the jury must determine its existence from all the evidence in the case ; and the court invades their province, if a part only of the facts is singled out and they are instructed to infer the felonious intent from them.

3. *Self-defence, except in extreme cases, can not endanger life.*—Every one has the right to defend his person and property against unlawful violence, and may employ as much force as is necessary to prevent injury. But this principle is subject to the qualification that he shall not, except in extreme cases, endanger life, or inflict great bodily harm.

4. *Life can not be taken to prevent a mere trespass.*—It is a principle of the criminal law of the State, that for the prevention of a mere trespass upon property—not the dwelling-house—human life can not be taken, or grievous bodily harm inflicted ; consequently, if in the defence of property, other than the dwelling-house, life is taken with a deadly weapon, it is murder, although the homicide may be actually necessary to prevent the trespass.

5. *The protection due to property is not enlarged by the secrecy of the trespass.*—The law declares with certainty the protection due to property, and defines the force which may be employed in the defence. And neither the secrecy of the trespass, nor the frequency of its repetition enlarges the one or the other.

6. *The degree of homicide caused by a mischievous engine planted on the premises, depends on the nature of the weapon.*—If an owner of land, by

(2)

[Simpson v. The State.]

means of spring-guns, or other mischievous weapons planted on his premises, causes death, he is guilty of criminal homicide. Its degree will depend on the nature of the instrumentality used. If it be a deadly weapon, the killing will be murder.

7. *A specific felonious intent must be proven.*—To authorize a conviction of an assault with intent to murder, a specific felonious intent must be proven. This is an indispensable element of the offence. The doctrine of an intent implied by law different from the intent in fact, can have no application to the crimes punished by section 3670 of the Code. If there was not the intent to murder the person assaulted, although there may have been a general felonious intent, a conviction of the aggravated offence would be improper.

8. *It is unlawful to plant spring-guns.*—The common law of England is not in all respects the common law of this country; and the rule which once prevailed there, that allowed the owner of property to set spring-guns to protect it against trespassers, is inconsistent with our customs and institutions, and has never obtained in this State.

APPEAL from the City Court of Montgomery.

Tried before the Hon. JOHN A. MINNIS.

The defendant was indicted at the July term, 1879, for an assault with intent to murder Michael Ford. The bill of exceptions in this case shows, "that Michael Ford owned and resided on a lot near the city of Montgomery; and that defendant owned and resided on a tract of land adjoining, and west of the lot of Ford. The two lots were divided by a line fence five feet high, made of plank placed closely together. The residence of the defendant was on the west side of his premises, and fronted to the west, and the rear or eastern part of the lot adjoined Ford's. This constituted defendant's garden, in which he raised vegetables for market. It, as well as a large part of Ford's lot, had been subject to overflow. To protect his land from inundation, the defendant had made a semi-circular embankment about four feet high around his garden, with a ditch on its outside; but inside of the line fence, and on the property of the defendant.

" The said Ford testified, that about daylight on the third day of April, 1877, he went down into his field to replace dirt around his potatoes, and when he had reached a point about the width of a street from the line fence between himself and Simpson, he was shot by some person unknown. He heard the report, and saw the flash of the gun, but did not see any person. The gun appeared to have been shot from the ditch of the defendant. Three shot took effect upon his face, one putting out his left eye, and one in his neck, penetrating the larynx."

Another witness testified, " that he saw the defendant go up out of his ditch in the lower part of his garden, to his house, with something dark-colored in his hand, too long for

a walking-cane, and had the appearance of being a gun; and there were the tracks of a man, and the print of the butt of a gun, at the point, whence the witness saw Simpson go in the morning.

There was evidence of enmity between Simpson and Ford. In an altercation between them, Ford charged Simpson with stealing his clay, and said that " he who would steal God's foot-stool would rob the grave ;" and Simpson replied, "God-damn you, you will fall by my hand yet." Ford answered, " I am not afraid of you, if you don't shoot."

It appeared, also, that the defendant had owned a spring-gun for a number of years; "and that, four or five years ago, he had put up a wooden placard on the ·roadside in front of his house, warning the public to beware‑ of spring-guns and man-traps. The notice remained awhile and rotted down, and had not been seen for some time prior to the third of April, 1877. The defendant had been in the habit of setting the spring-gun in his crib.

Before the third of April, 1877, the defendant habitually set the spring-gun in the lower part of his garden, at night, and took it away before sunrise every morning. Before he did this, repeated depredations and injuries to defendant's garden, such as tearing down the defendant's fence and break-ing down his embankment, had been committed by unknown persons in the night-time. " The spring-gun was set early in the night of April 2, 1877, at the bottom of his garden, and on the next morning the spring-gun was found discharged, and the cord attached to the trigger, and connected with a small stake in the embankment, broken. Drops of blood, appearing to be recently shed, and fresh tracks of persons on the embankment in front of the said spring-gun, were also discovered. A short time after seven o'clock on the morn-ing of the third of April, 1877, the defendant took up his spring-gun and carried it to his house.

" At the request of the counsel for the State, the court gave the following charges, which were in writing, and each was severally and separately excepted to by the defendant, as it was given :

1. " If the jury believe from the evidence, beyond a reasonable doubt, that the defendant, Thomas Simpson, shot Michael Ford with a gun, with the intent to murder him, the said ‾Michael Ford, as charged in the indictment in this cause, and that said shooting occurred in Montgomery county, in the State of Alabama, during the month·of April in the year 1877, then the jury must find the defendant guilty as charged in the indictment.

2. "If the jury believe from the evidence, beyond a reasonable doubt, that the defendant, Thomas Simpson, shot Michael Ford by means of, and with a spring-gun, with intent to murder him, the said Michael Ford, as charged in the indictment in this cause, and that said shooting occurred in Montgomery county, in the State of Alabama, during the month of April in the year 1877, then the jury must find the defendant guilty as charged in the indictment.

3. "That a trespass upon the garden of the defendant, Thomas Simpson, or depredations upon the vegetables growing in said garden, or depredations to the fencing around said garden, or depredations committed against the watergap in said garden, in neither event could justify said Simpson in using a deadly ·weapon against a person committing any of said trespasses or depredations; and if the jury believe from the evidence, beyond a reasonable doubt, that in the month of April in the year 1877, in Montgomery county, Alabama, said Simpson set a loaded spring-gun in his garden with intent to murder Michael Ford, as charged in the indictment, while said Ford might be engaged in committing some, or any, or all of said trespasses or depredations, or to prevent the said Ford from committing said trespasses or depredations, and that by the means thereof, in the month of April in the year 1877, said Michael Ford was shot by said spring-gun in Montgomery county, Alabama, then the jury must find the defendant guilty as charged in the indictment.

4. "If the jury believe from the evidence, beyond a reasonable doubt, that the defendant, Thomas Simpson, shot Michael Ford, during the month of April, 1877, in Montgomery county, Alabama, with the intent to murder said Ford, as charged in the indictment, then they must find the defendant, Simpson, guilty as charged in the indictment, no matter whether said shooting was done by a spring-gun or· any other kind of a gun.

5. "That if the jury believe from the evidence, beyond a reasonable doubt, that said Simpson shot said Ford, during· the month of April, in the year 1877, in Montgomery county, Alabama, with the intent to murder said Ford, as charged in the indictment, in pursuance of threats which had previously been made by said Simpson against the life of said Ford; and if the jury believe from the evidence, beyond a reasonable doubt, that such threats were so made, and in pursuance· thereof such shooting occurred, then the jury must find the defendant, Simpson, guilty, as charged in the indictment.

6. "The law presumes every man to intend the necessary·

consequences of his own acts, and if a man shoots another man with a deadly weapon, the law presumes that by such shooting he intended to take the life of the person thus shot.

7. "Malice is an essential ingredient of an assault with intent to commit murder, but if one man shoots another man by means of a spring-gun to prevent a trespass upon his garden, or to prevent depredations upon the fencing around his garden, or to prevent depredations upon a water-gap in his garden, in either event the law implies malice in such shooting, or if such shooting in either event was done in pursuance of previous threats made by the person shooting, against the person shot, then the law presumes malice from such a shooting with such a weapon."

The defendant then requested the court to give the following charges in writing:

1. "That the law gives every man the right to protect his property from assault and destruction by unknown persons who avail themselves of the cover and secrecy of darkness to destroy the same, by all the means necessary to that end, provided he does not thereby endanger the safety of the public; and whether the means he adopted for that end, are reasonable and proper and consistent with a due regard for the public safety, is a question for the jury.

2. "Though a man has no right to take life in defence of his property against a mere trespasser, yet when the injury is grievous in its character, and secret and repeated, and done by unknown persons under cover of darkness, the party injured may resort to any means necessary and proper for the protection of his property, consistent with the safety of the community, and whether the means adopted is necessary and reasonable and consistent with the rights of others, is a question for the jury."

The court refused these charges severally as requested, and the defendant excepted to each refusal.

ARRINGTON & GRAHAM, and RICE, JONES & WILEY, for appellant.—1. The effect of the sixth charge is that the jury is bound to presume the fact of intent from the shooting, and the character of the instrument used. The charge is in palpable violation of a principle announced in repeated decisions of this court. It invades the province of the jury. When all the evidence is before the jury no one fact can be singled out or disconnected from the others, and malice or any other essential of the crime be inferred from it.—52 Ala. 333. A man may shoot another with a deadly weapon and still be

[Simpson v. The State.]

innocent of the intent to take life.—23 Ala. 42.   The cir-
cumstances of this case, and especially the fact that the gun
was loaded with small shot, illustrates this principle; and
it should have been left to the jury to determine whether
the defendant intended to take the life of the particular per-
son who discharged it.—33 Ala. 413; 28 Ala. 693; 18 Ala.
534; 45 Ala. 82; 1 Bish. Cr. Law, §§ 514–15; Cases of Self-
defence, p. 343.

2.  It is error to require the jury to infer the existence of
malice from a part of the facts taken from the mass of the
evidence in the case.—52 Ala. 332; 45 Ala. 82; 47 Ala. 564.

3.  All the charges, except, perhaps, the first, are errone-
ous, because, when a man sets a spring-gun and goes away,
and another comes and springs it, he is not guilty of an
assault.   In assault there must be immediate peril, real or
apparent; there must be a force actually put in motion.
1 Russ. on Cr. (marg.) p. 604; 1 Ired. 128; 2 Bish. Cr. Law,
§§ 32, 34, 36; 1 Chitty on Plead. pp. 126, 127, 133, 167, 168.
The assault, under the statute, must be actual, not construc-
tive.—Code of 1876, § 4314; 1 Bish. Cr. Law, § 131.

4.  Setting a spring-gun under the circumstances disclosed
by the bill of exceptions, is lawful.—3 Stew. 481; 7 Marsh.
(Ky.) 478; 1 Esp. 203; 3 Barn. & Ala. 304; Sher. & Redf.
on Neg. § 509.   The language of the statute—7 and 8—of
George IV., " whereas, it is expedient to probibit the setting
of spring-guns," &c., shows it was lawful at common law.
There is no statute on the subject in Alabama.   If anything
more was needed, it is sufficient to say that while the prac-
tice of setting spring-guns has prevailed since guns came
into use in the fourteenth century, not a case can be found
in the reports of England or America, where any one has
been prosecuted for shooting another with a spring-gun.

5.  If the act was lawful when done, the party can not be
held responsible for the consequences, and the intent is im-
material.—5 Seld. 444.   The only exception to this rule is
when the act is the beginning, or proximate to an offence or
an attempt.—1 Bish. Cr. Law, §§ 314, 318; 12 N. H. 42.
The second charge, therefore, should have been refused.

6.  Charge numbered three is based on the ancient prin-
ciple, that it is lawful to kill to prevent a felony, but it
would be murder or manslaughter to slay to prevent a tres-
pass.   The reason for the rule has ceased.   Formerly all
felonies were punishable with death.   Now, in Alabama,
while felonies are numerous, few are punishable capitally.
It is a felony to steal one ear of corn, or one boll of cotton,

[Simpson v. The State.]

and it is only a misdemeanor to cut a bank by which whole acres of corn and cotton may be flooded.—53 N. H. 404; 7 Marsh. (Ky.) 478; 24 Ala. 67. But this ancient rule has no application, where the trespass is not committed in the party's presence.—*Scott v. Wilkes* 3 B. & Ald. 316, 317; 7 Taunt. 520; 17 Wend. 498.

7. Where the wrongs are greatly injurious and repeated, and done in secret and by unknown parties, and under such circumstances that the law is powerless to afford him a remedy, the only limit of his mode and measure of defence is the necessity of his case, and the rights and safety of his fellow-citizens. And whether the defendant has overstepped these, we repeat, are questions for the jury.—53 N. H. 404; 7 Marsh. (Ky.) 478.

8. The indictment must be framed in reference to the statute, and conform to its letter and spirit. It can not be aided by intendment, and must state positively and explicitly what the defendant is called upon to answer.—3 Stew. 131; 50 Ala. 128; 21 Ala. 223; 53 Ala. 488. The defendant can not be charged with a particular offence alleged to have been committed by a particular means, and convicted of another offence committed by other means. It is not sufficient to prove a general felonious intent, or any other specific intent than that alleged.—28 Ala. 693.

9. The indictment should have contained different counts to meet the various phases of the case.—Arch. Cr. Plead. pp. 470-1-2; 30 Ala. 13.

BRAGG & THORINGTON, for the Attorney-General, *contra*. 1. Charges are construed in connection with each other, and with the evidence to which they are applied; and if, when thus construed and applied, they are correct, though as universal propositions they may be erroneous, they do not warrant a reversal of the judgment.—1 Brick. Dig. p. 345, § 141; 26 Ala. 31. When thus construed and applied there is nothing either in the sixth or seventh charges to warrant a reversal in this case. Each of these charges were but instructions by the court as to presumptions of law upon the evidence.—28 Ala. 701.

2. Each of the charges, from one to five, both inclusive, went to the conviction of the accused. Each charge distinctly directed the jury that there could be no conviction unless the specific intent to murder Ford was proved beyond a reasonable doubt, which necessarily included malice as well as every other essential ingredient of the offence.—1 Brick. Dig. p. 806, § 44; 37 Ala. 123.

[Simpson v. The State.]

3. The evidence fully justified the seventh charge, and the presumption of law, as there stated, is correct. There is nothing in it of which the defendant can complain, or ought to cause a reversal of this case.—1 Brick. Dig. p. 806, § 44; ib. p. 34, § 141; 23 Ala. 28; 26 Ala. 31. "When a man commits an unlawful act unaccompanied by any circumstances justifying the commission of it, it is a presumption of law that he has acted advisedly, and with an intent to produce the consequences which have ensued."—Roscoe Cr. Ev. 20, and authorities; 1 Greenl. Ev. §§ 14, 18; 3 id. §§ 14, 15, and notes; 1 Brick. Dig. p. 806, § 44. "An assault with intent to kill can not be justified on the ground that it was necessary for the defence of property. The law in this respect must be the same as exists in homicides."—2 Whart. Cr. Law.

4. There is a well-recognized distinction between a presumption of law and a presumption of fact. A presumption of fact supplies the place of proof—it is proof. A presumption of law is not proof. Presumptions of law, like those asserted in charges six and seven, are disputable, and may be contradicted by evidence, or explained.

5. The charge upon which the case of *Moore v. The State* (18 Ala. 534), was reversed, is unlike any charge in this case. That charge ignored the question of specific intent, and for that cause was held vicious. No charge here given ignores the question of a specific intent; but, on the contrary, the charges are predicated upon the hypothesis that the specific intent must be proved beyond a reasonable doubt, like any other question of fact.

BRICKELL, C. J.—The indictment contains a single count, charging, in the prescribed form, the defendant with an assault with intent to murder one Michael Ford. It is founded on the statute (Rev. Code, § 3670), which reads as follows: "Any person who commits an assault on another, with intent to murder, maim, rob, ravish, or commit the crime against nature, or who attempts to poison any human being, or to commit murder by any means not amounting to an assault, must, on conviction, be punished by imprisonment in the penitentiary, or hard labor for the county, for not less than two, or more than twenty years." It is apparent the statute was intended for the punishment of several distinct offences, the elements of each being an act done, which of itself, though it may be an indictable offence, is aggravated by the intent attending it, and the higher offence

contemplated. Each was an offence known to the common law, indictable and punishable as a misdemeanor. We do not mean, of course, that each was at common law recognized as a separate, distinct, technical offence. An assault was a misdemeanor; if attended with a felonious intent, the intent was a matter of aggravation, justifying the imposition of severer punishment—not other or additional punishment—than that inflicted on misdemeanors, but severer in degree. *Beasley v. State*, 18 Ala. 534; *Meredith v. State*, in manuscript; 2 Whart. Cr. Law, § 1287; 2 Arch. Cr. Pl. 285, note. And so at common law, an attempt to poison, or by any means to commit murder, or to commit any felony, in itself is a misdemeanor.—3 Whart. Cr. Law, § 2696. We repeat, the statute provides for the punishment of several distinct offences, known to the common law. It does not declare the constituents of either offence; it is silent as to the facts which must concur, to constitute the felonious assault, or the felonious attempt. These must be ascertained from the common law, and if the statute had not prescribed the forms of indictments, or declared the averments it is necessary to make, the offence must have been described as at common law—the facts constituting the assault or attempt, must have been stated and connected with an averment of the felonious intent or design.—*Beasley v. State, supra.* Though indictments are abridged in form, and reduced to a statement rather of legal conclusions, than of the facts which support, or from which the conclusions may be drawn, the nature of offences is not changed, and the conclusion stated must be sustained by the same measure of evidence which would be necessary, if the facts on which it depends were stated. It is the assertion of a mere truism to say, that if an indictment charges one of these offences, it can not be supported by evidence of another. As in the present case, the charge of an assault with intent to murder, is not supported by evidence of an assault with intent to maim, or to commit either of the other designated felonies. Nor yet, would it be supported by evidence of an attempt to poison, or to commit murder, by means not amounting to an assault. The offence charged must be proved, and an essential element of the present offence is not only an assault with intent to murder, but the specific intent to murder Ford, the person named in the indictment. If the intent was to murder another, or if there was not the specific intent to murder Ford, there can not be a conviction of the aggravated offence charged, though there may be of the minor offence of assault, or of assault

[Simpson v. The State.]

and battery.—*Barnes v. State,* 49 Miss. 17 ;. *Jones v. State,* 11 Sm. & Mar. 315 ; *Ogletree a. State,* 28 Ala. 693 ; *Morgan v. State,* 33 Ala. 413 ; *State v. Abram,* 10 Ala. 928.

The intent can not be implied as matter of law; it must be proved as matter of fact, and its existence the jury must determine from all the facts and circumstances in evidence. It is true, the aggravated offence with which the defendant is charged can not exist, unless if death had resulted, the completed offence would have been murder. From this, it does not necessarily follow, that every assault from which if death ensued, the offence would be murder, is an assault with intent to murder, within the purview of the statute, or that the specific intent, the essential characteristic of the offence, exists. Therefore, in *Moore v. State* (18 Ala. 533), an affirmative instruction, " that the same facts and circumstances which would make the offence murder, if death ensued, furnish sufficient evidence of the intention," was declared erroneous. The court say : " There are a number of cases, where a killing would amount to murder, and yet the party did not intend to kill. As if one from a house-top recklessly throw down a billet of wood upon the side-walk where persons are constantly passing, and it fall upon a person passing by and kill him, this would be, by the common law, murder; but if instead of killing him, it inflicts only a slight injury, that party could not be convicted of an assault with intent to murder." Other illustrations may be drawn from our statutes ; murder in the first degree may be committed in the attempt to perpetrate arson, rape, robbery, or burglary, and yet an assault committed in such attempt, is not an assault with intent to murder. If the intent is to ravish, or to rob, it is under the statute, a distinct offence from an assault with intent to murder, though punished with the same severity. And at common law, if death results in the prosecution of a felonious intent, from an act *malum in se,* the killing is murder. As if A shoot at the poultry of B, intending to shoot them, and by accident kills a human being, he is guilty of murder.—1 Russ. Cr. 540. Yet, if death did not ensue, if there was a mere battery, or a wounding, it is not, under the statute, an assault with intent to murder. The statute is directed against an act done, with the particular intent specified. The intent in fact, is the intent to murder the person named in the indict-ment, and the doctrine of an intent in law different from the intent in fact, has no just application ; and if the real intent shown by the evidence is not that charged, there can not be

a conviction for the offence that intent aggravates, and in contemplation of the statute, merits punishment as a felony. *Ogletree v. State, supra; Morgan v. State, supra.* As is said by Mr. Bishop, the reason is obvious, the charge against the defendant is, that in consequence of a particular intent reaching beyond the act done, he has incurred a guilt beyond what is deducible merely from the act wrongfully performed; and therefore, to extract by legal fiction from this act such further intent, and then add it back to the act to increase its severity, is bad in law.—1 Bish. Cr. Law, § 514.

An application of these general principles, will show that several of the instructions given by the City Court were erroneous, and some of them misleading, or invasive of the province of the jury. The *sixth,* asserts the familiar principle of the law of evidence, that a man must be presumed to intend the natural and probable consequences of his acts, and from it draws the conclusion, "that if a man shoots another with a deadly weapon, the law presumes that by such shooting, he intended to take the life of the person shot." Whether this instruction would, or would not be correct, if death had ensued from the shooting, and the defendant was on trial for the homicide, it is not now important to consider. In a case of this character, the instruction is essentially erroneous, for if it has any force, it converts the material element of the offence, the intent to murder a particular person, into a presumption of law, drawn from the nature of the weapon, and the act done with it; while the intent is a fact which must be found by the jury, and the character of the weapon, and the act done, are only facts from which it may or may not be inferred. The weapon used, and the act done, may in the light of other facts and circumstances, import an intent to maim, or merely to wound, distinct offences from that imputed to the defendant; and maiming or wounding, is a probable, natural consequence of the act done, with such weapon. In *Morgan v. State* (33 Ala. 413), the court at the request of the defendant charged the jury, "that they must be convinced beyond all reasonable doubt, that the prisoner intended to shoot Scrimpshire," (the prosecutor), "before they can convict the prisoner of an assault with intent to murder," but added, referring to the particular facts of the case, "that the presenting of a pistol, loaded and cocked, within carrying distance, by one man at another, with his finger on the trigger, in an angry manner, is, of itself, an assault with intent to murder." This court said: "The explanatory charge given by the

court in this case can not be supported.  It ignores one of
the material facts which constitute the offence for which the
prisoner was on trial.  The defendant was not guilty as
charged, unless he committed the assault, and this act was
done with a special intent to kill and murder the person
assaulted."  It was said the facts were proper for the con-
sideration of the jury, and (quoting from *Ogletree v. State,
supra*), that it was competent for them, in their delibera-
tions, " to act upon the presumptions which are recognized
by law, so far as they are applicable, and their own judg-
ment and experience, as applied to all the circumstances in
evidence.  It does not, however, result as a conclusive
presumption at law, from the facts supposed in the charge,
that the accused had the intent to take the life of Scrimp-
shire : the surrounding circumstances should have been
considered by the jury ; and unless the jury were con-
vinced that the prisoner entertained the particular intent
to take the life of his adversary, then the prisoner could
not be convicted of the higher crime.  The particular in-
tent reaches beyond the act done, and is a fact to be found
preliminary to conviction, as necessary to the other fact
itself, viz : that the assault was committed.  In other words,
while the law permits and commands juries to indulge all
reasonable inferences from the facts in proof, it does, *proprio
vigore,* infer the one fact from another."  In *Scitz v. State*
(23 Ala. 42), a similar question was considered.  On an
indictment for an assault with intent to murder, the jury
returned a special verdict, finding the defendant " guilty
of striking with a loaded whip, calculated to produce
death, without any excuse or provocation," on which judg-
ment of conviction was pronounced, which was reversed,
because it was not a legal conclusion from the facts stated,
that the defendant had the particular intent to murder
the person assailed.  "An assault simply with intent to
frighten," say the court, " maim or wound, without pro-
ducing death, or for the purpose of inflicting punishment
or disgrace, is equally consistent with the finding of the
jury, as that it was an assault with intent to murder."
The true principle is, that the particular intent, the in-
tent to murder the person assailed, is matter of fact, about
which the law raises no presumptions, and indulges no infer-
ences.—*State v. Stewart,* 29 Mo. 419.  The jury must find
the fact; and in ascertaining its existence, they may and
will draw inferences from the character of the assault, the
want, or the use of a deadly weapon, and the presence, or

absence of excusing or palliating circumstances.—*Meredith v. State*, in manuscript. What are the presumptions or inferences in view of all the facts, they must be left free to determine; and the court misleads them, and invades their province, if a part only of the facts is singled out, and they are instructed from them, the felonious intent must be inferred.

The particular facts of the case, in one phase, in which the evidence presents it, are so interwoven with the remaining instructions, that a determination of the primary question they involve is necessary to a correct understanding of them. This question is the right of a land-owner to plant spring-guns on his premises, by which trespassers may be wounded, and what is his liability, if thereby a trespasser receives grievous bodily harm. Whether he was civilly liable at common law, was agitated in *Deane v. Clayton* (7 Taunt. 518), but not decided, the judges being equally divided in opinion. In *Ilott v. Wilkes* (3 Barn. and Ald. 304), the court of King's Bench unanimously decided that "a trespasser having knowledge that there are spring-guns in a wood, although he may be ignorant of the particular spots where they are placed, can not maintain an action for an injury received in consequence of his accidentally treading on the latent wire communicating with the gun, and thereby letting it off." Statutes followed soon after this decision, rendering persons setting or placing spring-guns, and other like agencies, calculated to destroy human life, or to inflict grievous bodily harm on trespassers, or others coming in contact with them, a misdemeanor.—1 Russ. Cr. 783. It is not our province to deny that the decision in *Ilott v. Wilkes* is a correct exposition of the comman law of England as it then existed. The common law of England, is not in all respects the common law of this country.— *Vanness v. Packard*, 2 Pet. 144. This court has frequently said, that in this State, only its general principles, which are adapted to our situation, and not inconsistent with our policy, legislation and institutions, are of force and prevail.—*State v. Cawood*, 2 Stew. 360; *N. & C. R. R. Co. v. Peacock*, 25 Ala. 229; *Barlow v. Lambert*, 28 Ala. 704. We concur in the conclusions reached by the Supreme Court of Connecticut· in *Johnson v. Patterson* (14 Conn. 1), *State v. Moore* (31 Conn. 479), after a careful examination, that the principle announced in *Ilott v. Wilkes* is not in harmony with our condition or our institutions, and that it had its origin in a state of society not existing here, and the necessity for protection to a species of property, not here· recognized, or if recognized, of less importance and value

[Simpson v. The State.]

than the legislation of Great Britain, and the common law there prevailing attached to it.

It is a settled principle of our law, that every one has the right to defend his person, and property, against unlawful violence, and may employ as much force as is necessary to prevent its invasion. Property would be of little value, if the owner was bound to stand with folded arms and suffer it taken by him who is bold and unscrupulous enough to seize it. But when it is said a man may rightfully use as much force as is necessary for the protection of his person and property, it must be recollected the principle is subject to this most important qualification, that he shall not, except in extreme cases inflict great bodily harm, or endanger human life.—*State v. Morgan*, 3 Ired. 186. The preservation of human life, and of limb and member from grievous harm, is of more importance to society than the protection of property. Compensation may be made for injuries to, or the destruction of property; but for the deprivation of life there is no recompense; and for grievous bodily harm, at most, but a poor equivalent. It is an inflexible principle of the criminal law of this State, and we believe of all the States, as it is of the common law, that for the prevention of a bare trespass upon property, not the dwelling-house, human life can not be taken, nor grievous bodily harm inflicted. If in the defence of property, not the dwelling-house, life is taken with a deadly weapon, it is murder, though the killing may be actually necessary to prevent the trespass. The character of the weapon fixes the degree of the offence. But if the killing is not with a deadly weapon—if it is with an instrument suited rather for the purpose of alarm, or of chastisement, and there is not an intent to kill, it is manslaughter. *Carroll v. State*, 23 Ala. 28; *Harrison v. State*, 24 Ala. 21; *State v. Morgan*, 3 Ired. 186; *Commonwealth v. Drew*, 4 Mass. 391; *McDaniel v. State*, 8 Sm. & Marst. 401; *State v. Vance*, 17 Iowa, 138; Whart. Hom. §§ 414-17. However true this may be, of violence the owner directly in person inflicts, for a trespass, or in defence, or prevention of a trespass, committed in his presence, the argument now made by the counsel for the appellant is that of the court in *Ilott v. Wilkes*, that for the prevention of secret trespasses, committed in the absence of the owner, he may employ means of defence and protection to which he could not resort if present, offering personal resistance. The instructions requested, place the proposition in its most imposing form—of protection against repeated acts of aggression, committed in the

[Simpson v. The State.]

night-time by unknown trespassers. For the prevention of such trespasses, he may, it is said, employ any agency or instrumentality adequate to the end, even though it involves, of necessity, grievous bodily harm, or death to the trespasser. The proposition itself subordinates human life, and the preservation of the body in its organized state, to the protection of property. It subjects the man to loss of limb or member, or to the deprivation of life, for a mere trespass, capable of compensation in money. How else can the owner protect himself, it is asked. The answer may well be, he is not entitled to protection, at the expense of the life, or limb, or member of the trespasser. All that the latter forfeits by the wrong, is the penalty the law pronounces. At common law, he would be compelled to compensation, for particular trespasses, and of the nature, in one respect, the defendant intended to guard against—the severance from the freehold of its products—not only is he compelled to compensation, but under our statutes, indictable for a misdemeanor. It may well be asked, in return, if the owner has the right to visit on the trespasser a higher penalty than the law would visit? Has he a right to punish a mere trespass as the law will punish the most aggravated felonies, which not only shock the moral sense, evince an abandoned, malignant, depraved spirit, but offend the whole social organization? There are but few offences the law suffers to be punished with death. Whether this extreme penalty shall be visited the law submits to the discretion and to the mercy of the jury—they may consign the offender to imprisonment for life in the penitentiary. There is no offence which is punished by the laceration of the body, or by loss of limb or member. Shall the owner, for the prevention of a trespass, inflict absolutely the penalty of death, a jury could not inflict, nor a court sanction? Inflict it without the opportunity the jury has, when they may lawfully inflict it, of lessening it in their mercy and discretion to imprisonment? Shall he, in protection of his property, lacerate the body, a punishment so revolting that it has long been excluded from our criminal code? If the owner is vexed by secret trespasses, and their repetition, his own vigilance must, within the limits of the law, find means of protection. Stronger enclosures, and a more constant watch must be resorted to, and a stricter enforcement of the remedies the law provides will furnish adequate protection. If these fail, it is within legislative competency, to adopt remedies to the exigencies and necessities of the owner.

It is said the spring-gun, or like engine, is harmless, if of his own wrong the trespasser does not come in contact with it. Admit it, and the controlling, underlying consideration is not met. If it was conceded thereby he lost his right to recover compensation for the injury sustained, the State does not lose the right, nor is its duty lessened, to demand retribution for its broken laws, and the unlawful death, or wounding of one of its citizens. With certainty the measure of protection to property is declared, and the force which may be employed in its defence is defined. The secrecy of the trespass, nor the frequency of its repetition, does not enlarge the one or the other. · Life must not be taken, nor grievous bodily harm inflicted. The trespasser is always in fault—it is his own wrong, which justifies force, to the extent it may be lawfully used, or to the extent it may be provoked and exerted. The secrecy and frequency of the trespass would not justify the owner in concealing himself, and with a deadly weapon, taking the life, or grievously wounding the trespasser, as he crept stealthily to do the wrong intended. What difference is there in his concealing his person, and weapon, and inflicting unlawful violence, and contriving and setting a mute, concealed agency or instrumentality which will inflict the same, or it may be greater violence? In each case, the intention is the same, and it is to exceed the degree of force the law allows to be exerted. In the one case, if the trespasser came not with an unlawful intent—if his trespass was merely technical—if it was a child,. a madman, or an idiot, carelessly, thoughtlessly, entering and wandering on the premises, the owner would withhold all violence. Or, he could exercise a discretion, and graduate his violence to the character of the trespass. The mechanical agency, is sensitive only to the touch—it is without mercy, or discretion, its violence falls on whatever comes in contact with it. Whatever may not be done directly can not be done by circuity and indirection. If an owner, by means of spring-guns or other mischievous engines planted on his premises, capable of causing death or of inflicting great bodily harm on ordinary trespassers, does cause death, he is guilty of criminal homicide.—Whart. Cr. Law, §§ 418, 553.

The degree of the homicide depends on the facts already stated. If the engine is of the character of a deadly weapon, the killing is murder. It could not be employed without the intent to injure, and without indifference whether the injury would be death, or great bodily harm. But if not.

[Simpson v. The State.]

deadly in its character, if it is intended only for alarm, and for inflicting slight chastisement, or mere detention of the trespasser until he shall be freed from it, there may be no offence, or at most but manslaughter. The character of the instrument, and its probable capacity for injury, may repel all presumption to do more than merely alarm, or without inflicting any corporal harm, merely to detain the trespasser, and stay him in his efforts to wrong, and if death should ensue, it would be beyond the intention of the owner, and an unforeseen, and not a natural or probable consequence of an act in itself not unlawful. For it is lawful to frighten away the trespasser, or by detaining him and staying the wrong he contemplates, to involve him in disgrace; to detect him, and to deter him from future trespasses. If the instrument is adapted only to the purposes of punishment, and it should inflict a punishment from which death ensued, the offence is manslaughter, as it would have been if the owner in person had inflicted the violence. The instructions requested by the appellant were inconsistent with these views, and were properly refused.

The instructions given by the City Court are some of them based on the theory, that if death had ensued from the wounding of the prosecutor, by the spring-gun, it would have been murder, it is a legal sequence, that the defendant is guilty of an assault with intent to murder. Others proceed on the theory that he is guilty of an assault with intent to murder, if the spring-gun was set with the specific intent to kill the prosecutor, whom he suspected as the trespasser, and against whom he bore malice, although there was also a general intent to kill whoever was the trespasser, coming in contact with it. We regard each class of instructions as erroneous.

An error pervading the first, is that a general felonious intent is made the equivalent of the specific felonious intent, which we have said is the indispensable element of the offence, with which the prisoner stands charged. A general felonious intention, by implication of law, will convert the killing of a human being into murder, though his death or injury was not within the intention of the slayer. So, also, if there is the felonious intention to kill one, and the fatal blow falls on another, causing death, it is murder. The act is referred to the felonious intent existing in the mind of the actor, and by implication of law supplies the place of malice to the person slain.—Whart. Hom. § 183; 4 Black, 261; *Bratton v. State*, 10 Humph. 103. The doctrine of an intent

(3)

implied by law, different from the intent in fact, can have no application to the offences the statute punishes. It is excluded by the terms of the statute, which include only direct assaults on the person of the party it is averred there was the intent to murder. If in fact there was not the intent to murder him, whether there was a general felonious intent, or an intent to do harm to some other individual, is not important — there can be no conviction of the aggravated offence.—*Morgan v. State*, 13 Sm. & Mar. 242; *Jones v. State*, 11 ib. 315; *Norman v. State*, 24 Miss. 54.

An assault is defined as an intentional attempt, by violence, to do a corporal injury to another. In *Johnson v. State* (35 Ala. 363), it is defined as "an attempt or offer, to do another personal violence, without actually accomplishing it. A menace is not an assault, neither is a conditional offer of violence. There must be a present intention to strike." In *Lawson v. State* (30 Ala. 14), it is said: "To constitute an assault, there must be the commencement of an act, which if not prevented, would produce a battery;" the drawing of a pistol, without cocking or presenting it, is not an assault. In *State v. Davis* (1 Ired. 125), it is said by GASTON, J.: "It is difficult in practice to draw the precise line which separates violence menaced, from violence begun to be executed, for until the execution of it is begun, there can be no assault. We think, however, that where an unequivocal purpose of violence is accompanied by an *act*, which is not stopped or diverted, will be followed by personal injury, the execution of the purpose is then begun, and the battery is attempted." Constructive assaults are not within the statute. The ulterior offence; the principal felony intended, and the intent to accomplish which, is the aggravating quality of the offence, consists in actual violence and wrong done to the person. The assault must, therefore, consist of an *act* begun, which if not stopped or diverted, will result, or may result in the ulterior offence, and the act when begun must be directed against the person who is to be injured.—*Evans v. State*, 1 Humph. 394; *State v. Freels*, 3 Humph. 228. It must also be an act which, when begun, the person against whom it is directed has the right to resist by force.—2 Arch. Cr. Pl. 224, 2 note.

The setting a spring-gun on his premises, by the owner, is culpable only because of the intent with which it is done. Unless the public safety is thereby endangered, it is not indictable.—*State v. Moore*, 31 Conn. 479. If dangerous to the public, it is indictable as a nuisance. Resistance by

force to the setting of it, by any individual (if not dangerous to the public), the law would not sanction, though he may apprehend injury to him is intended, if he trespass on the premises. The injury exists only in menace—it is conditional, and his own act must intervene, and put in motion the force from which injury will proceed. While because of the unlawful intention with which the gun is set, the owner is made criminally liable for the consequences he contemplates, it is not his violence except by implication of law which produces the injury. It is not, consequently, an assault which connected with an intent to murder, is punishable under the statute. If the gun is set with the intent to kill a particular person, who is injured by it, whether it is not an attempt to murder committed by means not amounting to an assault, indictable under another clause of the statute, is a question this record does not present.

The result is that the judgment of the City Court is reversed, and the cause remanded. The prisoner will remain in custody until discharged by due course of law.