[No. 1423.]

T. B. WHITE v. THE STATE.

1. ASSAULT WITH INTENT TO MURDER—CHARGE OF THE COURT.—In a prosecution for assault with intent to murder, the court charged the jury as follows: "If the act by which the killing or attempt to kill is done, is unlawful, and the result of design, and is such as would in its reasonable and probable consequences cause death, in such case, where there is nothing shown to mitigate, excuse or justify the act, the killing or attempt to kill would be with malice, and constitute murder or assault with intent to murder, whether the actual design was to take life or not." *Held*, error, in that it authorizes a conviction for assault with intent to murder, in the absence of a specific intent to kill. See the opinion *in extenso* on the subject.
2. ASSAULT WITH INTENT TO MURDER, as defined by Article 502, Penal Code, involves the simultaneous concurrence of two distinct elements, viz: An assault, and a specific intent to kill.

APPEAL from the District Court of Navarro. Tried below before the Hon. L. D. Bradley.

The indictment charged the appellant with an assault with intent to murder A. S. Gill, in Navarro county, Texas, on the twenty-fourth day of February, 1881; alleging that the weapon used was a derringer pistol. Upon this indictment he was tried and convicted, and awarded a term of two years in the penitentiary.

It appears from the testimony adduced on the trial that the defendant was a justice of the peace for one of the precincts of Navarro county, at the time of this alleged assault, and that a grand jury, of which the injured party, A. S. Gill, was a member, had recently presented an indictment against him for some offense. On the day alleged in the indictment, the defendant rode up to the premises of Gill, and called to Gill, who with others was then engaged in shingling a house, to come down, as he had business to discuss. When Gill approached, the defendant told him that he had come to see about the indictment against him for malfeasance in office; that he had been arrested; that he had the money on deposit, and could have arranged it, and that Gill knew it. Gill replied that the indictment did not

involve money matters, but a different matter. The defendant then denounced the witness and the entire grand jury as "d—d rascals," and demanded of Gill to know the offense for which the grand jury had indicted him. Gill declined to disclose any of the proceedings of the grand jury. The defendant insisted on being informed and upbraided Gill for not preventing his indictment. Gill asked if he thought that he, Gill, could control the action of the grand jury. The defendant replied that he could have prevented that indictment; and said: "Well, G—d d—n you, I have come down to settle it;" at which time he turned direct on Gill and drew his derringer pistol. Gill caught the pistol just as the defendant got his thumb on the hammer and finger on the trigger. A struggle ensued for the possession of the pistol, which Gill, with the assistance of Armstrong, whom he called, succeeded in wresting from the defendant. When deprived of his pistol, the defendant said: "I will shoot you anyhow," and ran his hand into his pocket and drew and opened a knife. He then cursed and abused Gill a great deal, begged for his pistol, cursed again, and finally rode off.

After the defendant left, the pistol was examined, and found to be loaded to the muzzle with large squirrel shot, and in that condition, considering the relative positions of the parties, was declared by Gill to be a deadly weapon. The defendant was very angry, and, though drinking somewhat, was not so drunk as not to know perfectly well what he said and did.

The motion for new trial assailed the verdict of the jury as contrary to the law of the case, and the evidence adduced, and arraigned the charge as erroneous in several paragraphs, including that upon which the conviction was reversed.

*H. W. Greer*, for the appellant.

*H. Chilton*, Assistant Attorney General, for the State.

Hurt, J. The appellant was convicted of an assault with intent to murder. The learned judge below submitted to the jury the following charge: "If the act by which the killing, or attempt to kill, is done is unlawful and the result of design, and is such as would in its reasonable and probable consequence cause death, in such case, where there is nothing shown to mitigate, excuse or justify the act, the killing, or attempt to kill, would be

with malice, and constitute murder, or assault with intent to murder, whether the actual design was to take life or not."

If, to constitute the offense for which defendant is convicted, it is necessary that the intent to kill should exist, the above charge is not the law, and the judgment must be reversed. The question therefore presented is, "Must the party intend to kill?" Article 500 of the Penal Code provides that, "If any person shall assault another with intent to murder, he shall be punished," etc. Can a party assault another with intent to murder without the intent to kill? Can murder be committed in the absence of the intent to kill? We answer, yes. Does it follow from this concession that an assault with intent to murder can be made in the absence of the intent to kill? We think not.

Murder is the unlawful killing of another with malice aforethought. How is it possible for a party to intend to murder, which is a killing prompted by malice, without intending to kill?

If a person intentionally inflicts serious bodily injury upon the person of another, which may result in death, although the intent to kill may not exist, the law, if the act was prompted by malice and death ensues, holds him guilty of murder. Again, if one from a housetop recklessly throws down a billet of wood upon the sidewalk where persons are constantly passing, and if it falls upon a person passing by and kills him, this would also be murder. Indeed, there are a number of cases where a killing would amount to murder and yet the party did not intend to kill. But we cannot conclude that it is a logical sequence that, because murder can be committed in the absence of the intent to kill, therefore an assault to murder can be made without this intent.

This precise question was before the Supreme Court of Alabama in the case of *Simpson* v. *The State*, 59 Ala., 1, and the court there held a charge quite similar to the one under discussion erroneous. In that case the court says: "The intent can not be implied as a matter of law; it must be proved as a matter of fact, and its existence the jury must determine from all the facts and circumstances in evidence. It is true that the aggravated offense with which the defendant is charged can not exist unless, if death had resulted, the completed offense would have been murder. From this it does not necessarily follow that every assault from which, if death ensued, the offense would be murder, is an assault with intent to murder within the purview of the statute, or that the specific intent, the essential character-

istic of the offense, exists. Therefore in *Moore* v. *The State* (18 Ala., 533), an affirmative instruction 'that the same facts and circumstances which would make the offense murder if death ensued, furnish sufficient evidence of the intention, was declared erroneous."

The court says: "There are a number of cases where a killing would amount to murder, and yet the party did not intend to kill. As, if one from a housetop recklessly throws down a billet of wood upon the sidewalk where persons are constantly passing, and it falls upon a person passing by and kills him, this would, by the common law, be murder, but if, instead of killing him, it inflicts only a slight injury, that party could not be convicted of an assault with intent to murder. Other illustrations may be drawn from our statutes. Murder in the first degree may be committed in an attempt to perpetrate arson, rape, robbery, or burglary, and yet an assault committed in such an attempt is not an assault with intent to murder. If the intent is to ravish or rob, it is, under the statute, a distinct offense from an assault to murder, though punished with the same severity. And at common law, if death results in the prosecution of a felonious intent from an act *malum in se*, the killing is murder. As if A shot at the poultry of B intending to shoot them, and by accident kills a human being, he is guilty of murder. (1 Russell on Crimes, 540.) Yet if death did not ensue, if there was a mere battery, or a wounding, it is not, under the statute, an assault with intent to murder. The statute is directed against an act done with the particular intent specified. The intent in fact is the intent to murder the person named in the indictment, and the doctrine of an intent in law different from the intent in fact, has no just application; and if the real intent shown by the evidence is not that charged, there can not be a conviction for the offense that intent aggravates, and in contemplation of the statute merits punishment as a felony." (*Ogletree* v. *The State, supra; Morgan* v. *The State, supra.*)

As is said by Mr. Bishop, "the reason is obvious; the charge against the defendant is that, in consequence of a particular intent reaching beyond the act done, he has incurred a guilt beyond what is deducible merely from the act wrongfully performed, and, therefore, to extract by legal fiction from this act such further intent, and then add it back to the act, to increase its severity, is bad in law." (1 Bish. Crim. Law., secs. 736, 514;

*Washington* v. *The State*, 53 Ala., 29; *State* v. *Neal*, 37 Maine, 468; *Moore* v. *State*, 18 Ala., 532.)

We do not, if we were competent, desire to add any further arguments. We think those of the learned judge, in the case above cited, exhaustive of the subject.

The learned judge below no doubt relied upon the following provisions of our Code: "Whenever it appears upon a trial for assault with intent to murder, that the offense would have been murder had death resulted therefrom, the person committing such assault is deemed to have done the same with that intent." (Article 502, Penal Code.) But, as observed by the court in the case cited: "Suppose the party should assault another with intent to rape or rob, if death resulted he would be guilty of murder in the first degree, but it does not follow, there being no death, that he would be guilty of an assault to murder. We know that he would not, but would be guilty of an assault to rob or rape, as the case may be." Our construction of Article 502 is as follows: In order to constitute the offense of an assault with intent to murder two things must concur: 1, An assault; and 2, a specific intent to kill. Without a simultaneous concurrence of these two constituent elements, there can be no assault with intent to murder. No other intent save the specific one to kill will be sufficient. If the intent is to maim, rob, rape, or other than to kill, it will not be an assault with intent to murder. The intent may be to kill under circumstances which, if death ensued, it would not be murder. Such intent would not constitute the specific intent to murder required in the offense. The article of the Code which we have quoted is applicable only where there exists the specific intent to kill. It is not applicable in any case where such intent does not exist. It simply prescribes a test by which to determine whether there was an offense, and, if so, what offense; but in thus affording a test does not dispense with the very gist of the offense, that is, a specific intent to kill.

We are of the opinion that the charge complained of was erroneous, and that the judgment must be reversed. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered November 18, 1882.