[No. 1473.]

ANDREW COURTNEY *v.* THE STATE.

1. ASSAULT WITH INTENT TO MURDER—CHARGE OF THE COURT.—In order
   to authorize a conviction for an assault with intent to murder, it must
   appear that at the time of the assault it was the intent of the accused to
   kill the injured party. Where, in a prosecution for assault to murder,
   the intent to kill is made by the evidence the predominant question at
   issue, it is the duty of the court to charge the jury fully upon the ques-
   tion of intent. See the opinion *in extenso* for charges upon the subject
   *held* insufficient.
2. CONSTRUCTION OF STATUTES—CASE APPROVED.—See the case of *White*
   v. *The State, ante,* p. 259, for the proper construction of Article 502 of the
   Penal Code.

APPEAL from the District Court of Marion.   Tried below be-
fore the Hon. B. T. Estes.

The indictment charged the appellant with an assault to mur-
der Dennis Blake on June 1, 1881.   The verdict of guilty assessed
as punishment a term of two years in the penitentiary.

Dennis Blake, the alleged injured party, was the first witness
introduced by the State.   He testified that, on the morning of
the day alleged in the indictment, he was plowing in his field in
Marion county, and the defendant was plowing in his, across the
road and directly opposite, and at a distance of perhaps two
hundred yards.   Lucinda Courtney, Sally Sheppard and another
woman came down the road, "jowering," and the witness sup-
posed that the defendant heard them, as he came to where they
were.   The witness had stopped his horse in his field, across the
fence from where the parties were.   When the defendant came
up he said to the witness: "Your wife is a d—d liar."   The
witness replied: "Don't you curse my wife—come up to the
fence and let me talk to you."   Thereupon the defendant ran his
hand into his pocket, pulled out a black-handled pocket-knife,
with a blade about three or four inches long.   He crossed the
fence, pressed towards the witness, who was backing, and made
efforts to cut him.   As he still pressed his efforts to cut the wit-
ness, the witness stooped, picked up a stone, threw at and missed

the defendant. The witness picked up a second stone, and struck the defendant on the shoulder with it.

The defendant had now pressed the witness so close that the latter caught his hands and was holding him when the defendant's mother came up and took hold of the witness, to prevent the defendant from cutting him. She told the defendant to go out of the field. While the defendant's mother held the witness, the defendant struck him with the knife, cutting him slightly on the head, back of the left ear. Thereupon, the defendant recrossed the field and left. The cut was small and bled a little, but did not hurt much.

Cross-examined, the witness testified that he did not call the defendant and say to him "come down here, and I will tell you what I said." He did not say to the defendant: "You have come into my field to fight me; now wait until I come back," and the witness did not go off about fifteen yards and pick up the stones and strike the defendant with one before they came together. The defendant did not stop after he crossed the fence, but kept up his pursuit of the witness. The stones the witness threw were about as large as a man's fist. The witness had backed fifteen feet or fifteen steps before he picked up the rocks. The witness's wife was at the house. fifty or a hundred yards distant, but came to the parties just as Lucinda Courtney held the witness and drove the defendant off.

Sally Sheppard, a witness for the State, testified that she and Lucinda Courtney, the mother of the defendant, were walking along the road on the morning in question, talking but not quarreling about the report that the defendant had insulted the witness Blake's wife. The defendant came to where the parties were, and stood in the road. Dennis Blake, who was in his field, told the defendant to come up to the fence and let him, Blake, talk to him, defendant. The defendant started, and as he went he pulled a knife from his pocket and opened it. He kept right on over the fence into the field where Dennis Blake was. He stopped after he got into the field, and Blake said to him: "You have come into my field to fight." The defendant replied: "Well, they are telling d—d lies about me." Blake then said: "You stand here and wait until I come back." He, Blake, then left the defendant and went up the fence towards his house, and when he reached a point about fifteen steps distant he stooped and picked up two rocks and threw them at the defendant, the last one striking the defendant on the shoulder.

The defendant and Blake then got together, and the defendant's mother interfered and drove the defendant out of the field.

Cross-examined, the witness stated that she was behind the defendant when he crossed into the field. He did not go very close to Blake, but stopped within about ten feet of him. The defendant made no effort to hurt Blake until after Blake had thrown the stones at him, and struck him with one. The one approached about as much as the other did. The witness saw no knife in the field. She saw a small cut and some blood on Blake's head.

Matilda, wife of the witness Dennis Blake, testified, for the State, that she was standing in her door about one hundred yards off, and saw the defendant getting over the field fence, running his hand in his pocket as he did so. The witness went down to where the parties were, and as she got near them she saw the defendant's hand go up and down, once, over Dennis Blake's head. She saw the blood and the small wound, but saw no knife. As she went up to the parties the defendant backed off, and out of the field.

Lucinda Courtney, a witness for the defendant, testified that the defendant was her son. On the morning in question Blake was plowing in his field near the fence, and the defendant was plowing in his field across the road, nearly a hundred yards away. While the witness was walking along the road, talking to a companion, she heard Blake say in a loud voice, but apparently speaking to no one: "It is a d—d lie." The defendant came up and asked: "Mammy, what was that Dennis said?" Before the witness could answer, Blake exclaimed: "Come over here and I will tell you what I said." The defendant started over the fence, and the witness put her hand on his shoulder to stop him, fearing trouble from the manner in which Blake spoke. The defendant, however, took no notice of the witness, and got into the field, and a rail broke and the witness fell back into the road. The witness got into the field as soon as she could, and saw the defendant and Blake standing some little distance apart. Blake said: "Now you are over in my field to fight me; I have the law on you; you wait here until I come back." Blake then went about ten steps and picked up two stones and threw them at the defendant, the second striking the defendant on the shoulder. Defendant and Blake then came together, and the defendant threw Blake and had him down. The witness separated the two, and sent the defendant out of the field. The

ground where the defendant threw Blake was rocky. The witness saw some blood and a small cut on Blake's head. The defendant had no knife.

Cross-examined, the witness stated that she had every opportunity to have seen a knife in the defendant's hand, and affirmed positively that he had no knife at any stage of the difficulty. He was not near enough Blake to strike, until after Blake struck him with the stone.

The motion for new trial assailed the verdict as unsupported by the law and the evidence, and attacked the evidence as insufficient to establish an intent to commit murder.

No brief for the appellant has reached the hands of the Reporters.

*J. H. Burts,* Assistant Attorney General, for the State.

HURT J.   Andrew Courtney, the appellant, was convicted of an assault with intent to murder Dennis Blake. By a careful reading of the evidence in this case it will be seen that the issue, the vital point presented, is: Did the defendant assault Blake with intent to *kill* him? This issue being so prominently made by the evidence (which will be given in full by the Reporter), the defendant was entitled to a charge upon the same.

The jury should have been told, in substance, that to convict defendant they must believe from the evidence that he assaulted Blake with intent to *kill* him. The jury were not informed by the charge that it was necessary, in order to constitute this offense, that the intent to kill must exist. We are not to be understood to intimate that a party would be guilty of an assault to murder in all cases in which an assault is made with intent to kill. This would depend upon the circumstances. But we do assert that, to constitute an assault to murder, there must be an intent to kill.

The only charges submitted to the jury germane to this subject are these:

"Where an assault is made by one person upon another with a deadly weapon, or such weapon as by its use as a weapon is calculated to produce death or serious bodily harm, and under such circumstances as, had death resulted to the person assaulted from the assault, the offense would then be murder, such an assault would be an assault to murder.

"If the evidence shows to you, beyond a reasonable doubt, that the defendant at any time within three years before the date of the filing of the bill of indictment, which was on the fourteenth day of December, 1881, and in the county of Marion, cut and wounded Dennis Blake with a knife; that the knife so used by the defendant was a deadly weapon, or such weapon as was calculated in its use as a weapon to produce death or serious bodily harm, and there is no evidence tending to excuse or justify the act, or to show that it was done under the immediate influence of a sudden passion arising from an adequate cause, such as I have named, or others; and you further find from the evidence, beyond a reasonable doubt, that, had death resulted to the said Blake from the said wounding and cutting, the offense would then have been murder either of the first or second degree, then you will find the defendant guilty of an assault with intent to murder."

These charges were inspired no doubt by Article 502 of the Penal Code, which is as follows: "Wherever it appears upon a trial for assault with intent to murder that the offense would have been murder had death resulted therefrom, the person committing such assault is deemed to have done the same with that intent." This article is made the only test, and from it it is inferred that it is not necessary for the specific intent to take life to exist in order to be guilty of an assault with intent to murder; that, death resulting, if the party would be guilty of murder, death not resulting he would be guilty of an assault with intent to murder; and, as murder can be committed without the existence of the specific intent to kill, so can an assault to murder. These deductions, we think, are *non sequitur* and erroneous.

We have given our views upon this subject in *White* v. *The State, ante,* p. 259, which will be found in the Texas Law Reporter, vol. 2, p. 797. In that case will be found our construction of Article 502, Penal Code. Because the court failed to charge the law imperatively demanded by the issue presented by the evidence, and because the test submitted to the jury not being the only test, the judgment is reversed. (59 Ala., 1; 18 Ala., 533; 1 Bish. Crim. Law, secs. 736 and 514; 53 Ala., 27; 37 Maine, 216; 18 Ala., 532; *White* v. *The State,* Texas Law Rep., vol. 2, 797.)

*Reversed and remanded.*

Opinion delivered February 21, 1883.