[No. 5814.]

## HORTON v. THE PEOPLE.

Criminal Law—Use of Deadly Weapon—Presumption—In a prosecution for an assault with intent to commit murder, the intent is of the gist of the offense, and is to be found by the jury.—(254)

To charge that, from the use of a deadly weapon, a presumption of an intent to take life arises, is error.—(254)

It is the exclusive province of the jury to determine the intent of the accused from all the evidence.—(254)

*Error to Larimer District Court*—Hon. JAMES E. GARRIGUES, Judge.

Mr. GEORGE A. CARLSON, and Mr. J. J. HERRING, for plaintiff in error.

Mr. WILLIAM H. DICKSON, and Mr. GEORGE D. TALBOT, for defendant in error.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Plaintiff in error was convicted of assault with intent to commit murder, and sentenced accordingly.

The prosecuting witness, Harris, upon whom the assault was committed, testified that Horton approached him and began to abuse him, struck at him, and drew a gun; that he pleaded with him not to

shoot, as he was unarmed; that for some three or four minutes he endeavored to dissuade him from shooting; that he picked up a monkey wrench which he, the witness, had dropped, and threw it at him; that they then clinched; that he then tried to get away, when Horton again pulled his gun out of his pocket, and shot him in the left arm.

The defendant testified in his own behalf, that he asked Harris about some hobbles and monkey wrenches he had accused him of stealing; that Harris said he had not accused him of stealing these articles; that he then said: "You certainly did," to which Harris replied he was a liar. Horton retorted in kind, when Harris jerked out a monkey wrench and struck him over the head; that he, defendant, struck at him but missed; that he then pulled the pistol out of his pocket and said to Harris: "Throw that monkey wrench down"; that Harris threw it on the ground, and that then he put the pistol in his pocket; that Harris then made a move to secure the wrench, but that he, the witness, secured it first, threw it at him, and possibly struck him; that Harris said: "If you will put that pistol away, I will beat h—— out of you"; that he then turned to the cook-shack for the purpose of putting the pistol away; that Harris then commenced beating him with something, an iron of some kind; that he guarded off the blows as best he could, and kept backing off. Finally, he struck him with the iron again, when he jerked out his pistol and fired.

The court instructed the jury to the effect that a person is presumed to intend the natural consequences of an act voluntarily done, and if it appeared that the defendant pointed a loaded pistol at Harris and fired the same at him at a sufficient range for the ball to penetrate his person, and that the same did

actually pass through his arm, then the presumption would be that he intended to take his life. This was erroneous. In a prosecution under our statute for an assault with intent to commit murder, the intent with which the assault is committed is the· gist of the offense, so that in order to convict it must appear that the assault was made with the specific intent to take the life of the person assaulted, and it is for the jury to determine whether or not such intent has been proven.—*Patterson v. State,* 21 Am. St. Rep. 151, 85 Ga. 131; *Simpson v. State,* 31 Am. St. Rep. 1, 59· Ala. 1; *People v. Mize,* 80 Cala. 41.

By the instruction given, the jury were plainly told that from the use by defendant of a weapon calculated to produce death it should be presumed that death was intended, when it was their exclusive province to determine, from all the evidence and circumstances in the case, what his intent was when he discharged the pistol at Harris. The instruction was not only misleading, but, in effect, precluded them from considering the question of intent from all the testimony, for, under the evidence, by following it, they were bound to convict upon the mere proof of the shooting, without. regard to what the intent of the defendant may have been, which was a question of fact for them to determine, from all the circumstances and testimony in the case, and not from the shooting alone.

The judgment of the district court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Decision *en banc.*

Mr. JUSTICE HILL did not participate in this decision.

CHIEF JUSTICE STEELE dissents.