## OGLETREE *vs.* THE STATE.

[INDICTMENT FOR ASSAULT WITH INTENT TO MURDER.]

1. *Variance.*—Under an indictment for an assault on A, with intent to murder, the defendant's threats, made several hours "previous to the fight", that he would kill B, are not admissible evidence against him.

2. *Intent.*—To constitute an assault with intent to murder, which is a felony by statute, it is not sufficient to prove a general felonious intent, or any other than the particular intent alleged in the indictment; the burthen of proving the alleged intent, as well as the other facts which constitute the felony, is on the State; and its actual existence is a question of fact for the jury, in the decision of which they ought to act upon those presumptions which are recognized by the law, so far as they are applicable, and their own judgment and experience, as applied to all the the circumstances in evidence.

3. *Charge on portion of evidence.*—Under an indictment for an assault with intent to murder, a charge which selects a portion only of the facts disclosed by the testimony, and instructs the jury that, if these facts are proved, "the law presumes that the act was malicious", and that the defendant "intended to kill", is erroneous, because it shifts the burthen of proof, and loses sight of the recognized distinction between civil and criminal cases in the measure of proof; nor is the error cured by further instructing the jury, in a subsequent part of the charge, that these presumptions of law only arise in the absence of evidence tending to qualify or explain the selected facts, and may be rebutted, qualified, or explained away by the evidence, "so that, if they find the facts upon which these presumptions of law arise, with other evidence tending to qualify or explain them, it will be their duty to consider all the evidence in connection, and if, upon the whole evidence, they entertain a reasonable doubt, they should acquit the defendant."

4. *Distinction between civil and criminal cases in measure of proof.*—In a civil action, if the plaintiff establishes a *prima facie* case, the burthen of proof is thereby

shifted, and he is entitled to recover, unless his *prima facie* case is destroyed by proof from the defendant; but in a criminal case, the State being required to prove, beyond all reasonable doubt, the facts which constitute the offense, the establishment of a *prima facie* case only does not take away the presumption of the defendant's innocence, nor shift the burthen of proof.

5. *Charge properly confined to matters in issue.*—The court is not bound to instruct the jury, at the defendant's request, "that they cannot find the defendant guilty of an assault with intent to murder, unless they are satisfied from the evidence, beyond a reasonable doubt, that, if death had ensued from the assault, he would have been guilty of murder in the first degree."

APPEAL from the Circuit Court of Chambers.

Tried before the Hon. JOHN GILL SHORTER.

INDICTMENT against William Ogletree, for an assault on Stephen H. Tiller, with intent to murder him. The bill of exceptions states the following facts: "The State introduced one J. S. Mitchell as a witness, who testified, that an altercation commenced between himself and Ogletree, before the drug-store; that Ogletree, with a stick in his hand, waving it about, commenced cursing him; that the first words were spoken by Ogletree to him; that he then asked Ogletree, if that was the stick he (O.) shook over him in the court-house; that Ogletree replied, it was, and he would do it again; that witness then told him he would see him about it at court, and passed on to his store, and sat down in a chair on the platform in front of the house, and was conversing with a man, when defendant immediately came up, stood in front of him, and commenced cursing him, and shaking over him the stick which he held in his hand; that Stephen H. Tiller, the person who was afterwards cut, came out of the store, and told defendant 'that he couldn't hit Jim Mitchell with that stick; that defendant said, 'Damn you, I'll give it to you', and immediately struck at Tiller with the stick; that Tiller caught the stick in his hand, and defendant drew a dirk-knife, and stabbed Tiller in his right *rib;* that Tiller did not either strike or kick at defendant before he was stabbed; that defendant advanced upon Tiller in the commencement of the fight. Witness said, that he did not recollect that he had made an affidavit to procure a warrant for defendant, or before whom it was made, and that he had

employed counsel to prosecute defendant. It was in evidence, that witness had made two affidavits to procure warrants to arrest defendant. The State introduced a witness, and asked him, 'Did you hear defendant make any threat, against any person, previous to the fight? if so, what was the threat, and who was it against?' The defendant objected to the question, but his objection was overruled; and he excepted. Witness answered, that he heard defendant say, about 9 o'clock in the morning of the day in the evening of which the fight took place, 'God damn Jim Mitchell, I will kill him.' The defendant objected to this answer, but the court overruled the objection, and permitted the evidence to go to the jury; and defendant excepted.

"Stephen H. Tiller was introduced as a witness, and stated, that he came out of the store when defendant was cursing Mitchell, and told defendant that he could not strike Mitchell with that stick; that defendant then struck at him with the stick, but he caught it in his hand, and, whilst he had hold of it, defendant cut him; that he did not kick at defendant before he was cut, and had no stick or weapon; that he had never seen defendant before, never cursed him, and did not follow him into the grocery; that he did see defendant in McLemore's grocery in January, after the fight took place, but did not tell him that he did not blame him for cutting him; that he did tell a man, by the name of Turner, that he did not blame defendant for cutting him,— that, if he had been in defendant's place, he would have done the same, and that he would, if in such a crowd, cut his way through it; and that he said so then. Another witness for the State testified, that himself and Mitchell were in front of the drug-store where defendant was standing, leaning on a stick; that Mitchell spoke to defendant first, and asked him if that was the stick he had shaken over him, mentioning some former time; that the first words were spoken by Mitchell, to defendant; that defendant replied, it was the stick; that witness and Mitchell passed on to Mitchell's store, and sat down; that defendant came up, squatted down before Mitchell, and commenced talking to him; that Tiller came up, and said to defendant, 'You shall not hit Mitchell with that stick'; that defendant replied, 'Do you take it up? if

you do, come out, and we'll settle it'; that Tiller said, 'If you want to fight Mitchell, you can get a fight out of me'; that defendant then retired off the side-walk, Tiller followed him, and the fight immediately commenced, but witness did not see who struck first. Another witness for the State testified, that he saw a man, by the name of Stanley, strike defendant over the head with a stick, before defendant cut Tiller with the knife. Another testified, that he was present when the quarrel commenced, and that defendant did not have any stick. Another testified, that defendant invited Tiller out to fight, and they both walked out a few steps,—defendant first, and Tiller following him; that defendant, as he stepped off the side-walk, turned around, and struck at Tiller; that Tiller caught the stick, and whilst they were scuffling for the stick, defendant drew his knife, and cut at Tiller, but (he thinks) did not hit him; that he then struck at Tiller the second time, and, whilst in the act of striking the third time, a man by the name of Stanley struck his arm with a stick, and knocked the stick out of his hand.

"Three witnesses for the defendant testified, that they were present when the fight between Tiller and defendant took place, and saw some two or three sticks strike at defendant, and hit him on the head, at or nearly at the same time; and that the fight was very short. One of these witnesses stated, that he saw the commencement of the fight; that some person kicked at defendant as he was stepping off the side-walk; that defendant turned around, and was in the act of striking, when some person caught his stick; and that he saw some two or three sticks then strike defendant over the head. Another testified, that he was present when the fight commenced; that defendant walked out to get off the side-walk, and Tiller followed him; that Tiller, as defendant stepped off the sill of the side-walk, kicked at him, and hit or brushed him on or near the hip; that defendant turned around, and drew back his stick, but witness caught at the stick, and some other person caught hold of it before the blow was struck; that witness saw no more, until he saw Stanley strike defendant two or three blows with a stick over the head. Another testified, that he was present when the fight commenced; that he saw some person strike at defendant with a

stick, before defendant drew his knife, but could not say whether the blow took effect or not; that he saw defendant then strike with his knife the first time, and, whilst in the act of striking again, saw Stanley strike him two or three blows over the head with a stick. It was further in evidence that the fight took place in the town of La Fayette, on a day when there was public speaking during a political canvass; that there was a large crowd of people present, and a high state of excitement prevailing at the time. It was further stated, by some witness who testified as to the threats made by the defendant in the morning, that he was well acquainted with defendant; that defendant appeared to be drinking at the time, and very much excited. Another witness for the State testified, that when he rode into town, on the morning of the day of the difficulty, and was hitching his horse, he saw defendant, and heard him say, 'Damn him, I'll kill him', and added, slapping his hand upon his breast, 'for I've got the tools to do it with'; that he was unacquainted with the defendant, and did not know of whom he was speaking.

"The above, though not a particular and full statement of all the evidence, is substantially the testimony as to the difficulty; and upon this evidence, the court charged the jury, 'That to authorize the defendant's conviction as charged in the indictment, the evidence should satisfy their minds, beyond a reasonable doubt, that the defendant made an unlawful assault upon Stephen H. Tiller, in the county of Chambers, in this State, within three years before the finding of the indictment, and that the assault was made with the intent to kill said Tiller, and that the assault with intent to kill was made with malice; that if they found, from the evidence, that defendant made an unlawful assault upon said Tiller, and stabbed him, with a weapon calculated to take life, and used the weapon in a manner likely to kill, the law presumes that he intended to kill, as death would be the natural result of the act; and if they found, from the evidence, that defendant made an unlawful assault upon said Tiller, with a weapon calculated to take life, and used the weapon in a manner likely to kill, the law presumes that the act was malicious; but that these presumptions of the law, as to intent and malice, arise upon the facts stated by the court, and in

45

the absence of evidence tending to qualify or explain them, and may be rebutted, or qualified, or explained away by the evidence; so that, in this case, if they should find the facts upon which these presumptions of law arise, and other evidence to qualify or explain them, it will be the duty of the jury to consider all the evidence in connection, and if, upon the whole evidence, they entertain a reasonable doubt whether the defendant made an unlawful assault upon said Tiller, or intended to kill him, or whether the act was malicious, they should acquit the defendant of an assault with intent to murder."

The defendant excepted to this charge, and asked the following: "That the jury cannot find the defendant guilty of an assault with intent to murder, unless they are satisfied from the evidence, beyond a reasonable doubt, that, if death had ensued from the assault, the defendant would have been guilty of murder in the first degree in killing said Tiller; and that they cannot find the defendant guilty of an assault with intent to murder, unless they are satisfied from the evidence, beyond a reasonable doubt, that, if death had ensued from the assault, defendant would have been guilty of willful, deliberate, malicious, and premeditated killing of said Tiller." The court refused these charges, and defendant excepted.

No errors are assigned on the record.

P. M. ALISON, for the appellant:

1. The defendant's threats against Mitchell ought not to have been received as evidence against him, under an indictment for an assault with intent to murder Tiller. The assault and intent must be proved as laid.—Wharton's Criminal Law, 157; Archbold's Criminal Pleadings, 426–7; Roscoe's Criminal Law, 73; 3 Greenl. Ev. § 17.

2. Murder, in this State, consists of two degrees; the first degree embracing every homicide perpetrated with malice, either express or implied. If no malice exists, express or implied, no intent to murder can exist, unless embraced in section 3080 of the Code. This indictment was found under section 3106. The intent constitutes the offense; and it was necessary, in order to make out the charge against him, to show that the assault was made under such a state of facts,

that, if death had ensued to the person assaulted, it would have been murder, and, of necessity, murder in the first de-. gree. To amount to murder, the killing must be willful, deliberate, premeditated, and malicious; and in like manner, the intent, to amount to an intent to murder, must be willful, deliberate, premeditated, and malicious.—Wharton's Criminal Law, 316; Moore v. The State, 18 Ala. 532; Scitz v. The State, 23 *ib.* 42. The evidence in this case, so far from proving the alleged intent beyond a reasonable doubt, shows that the defendant must have been forced to believe that it was necessary for him to strike, in self-defense, in order to save his own life, or to prevent great bodily harm.—Oliver v. The State, 17 Ala. 587; Quesenberry v. The State, 3 Stew. & P. 308.

M. A. BALDWIN, Attorney General, *contra:*

1. There was no error in the refusal of the charge asked by the defendant. The proper charge is, that the assault must be made under such circumstances, that, if the death of the assaulted person ensued, it would have been murder, without stating in what degree.—Scitz v. The State, 23 Ala. R. 43. The statute under which this indictment was found, does not require that the intent must be to commit murder in the first degree : if the intent was to murder, the degree of murder is immaterial.—The State v. Williams, 3 Foster's (N. H.) R. 326; Wright v. The State, 9 Yerger, 342; Moore v. The State, 18 Ala. R. 534. Before any homicide can be murder in the first degree, under our statute, which is in the same language as the Tennessee statute, the intent to kill must be formed before the fatal blow is struck; while this charge asserted, that the intent must be formed before the assault was made.—Dale v. The State, 10 Yerger, 551; Anthony v. The State, Meigs, 276. If this were the law, there could be no such thing as an assault with intent to murder, where the design to take life and the assault were simultaneous.

2. The second charge asked, was also properly refused.— Sharp v. The State, 19 Ohio, 386.

3. That the charge given was correct, see Cole v. The State, 5 English, 318, cited in 11 U. S. Digest, p. 39, § 18.

RICE, C. J.—The indictment is founded upon section 3106 of the Code, and is in accordance with the form which the Code provides for an indictment under that section.—Code, page 700, form No. 16. It alleges that the defendant, "unlawfully, and with malice aforethought, assaulted Stephen H. Tiller, with intent to murder him," &c.

The offence alleged was not, at common law, a felony; but under our code, it is a felony.—Code, sections 3071, 3106. A misdemeanor, to-wit, an assault, or assault and battery, is necessarily included in the offence with which the defendant is charged; and, according to our code, the defendant may be convicted either of the misdemeanor, or of the felony.—Code, § 3601. But Stephen H. Tiller is the person upon whom the offence, whether considered as a misdemeanor or as a felony, is alleged to have been committed; and it is very clear, that a threat of the defendant, made several hours "previous to the fight" between Tiller and the defendant, in which the assault relied on for a conviction occurred, that he would kill James Mitchell, does not prove, or tend to prove, the offense alleged in the indictment. A threat of the defendant, made at a particular time, to kill a particular man, is not legal evidence to prove that, at a subsequent time, he assaulted a different man, or that he intended to murder a different man. According to all the authorities that have come under our observation, the court below erred in permitting the State to prove the threat of the defendant to kill Mitchell,—it appearing that the threat was made several hours "previous to the fight" between the defendant and Tiller.—Rex v. Holt, 7 Car. & Payne, 518; Morgan v. The State of Mississippi, 13 Smedes & Marsh. 242; State v. Williamson, 16 Missouri Rep. 394; The State v. Curran, 18 Missouri Rep. 320; Johnston v. Br. Bk. at Montgomery, 7 Ala. R. 379; Oden v. Rippetoe, 4 Ala. R. 68; Morris v. The State, 8 Smedes & Marsh. 772; Dowling v. The State, 5 ib. 686; Patterson v. The State, 21 Ala. R. 571.

That error makes it our duty to reverse the judgment, and to remand the cause, although no other error may have been committed. But, as the questions raised by the charge of the court, and by its refusals to charge as asked by the defendant,

will probably arise on another trial, we feel bound to express our opinion as to them.

In the consideration of the charge of the court, it is important to bear in mind *the nature and ingredients* of the alleged offense. The defendant is indicted not merely for what *he has effected*, but for what he *intended* to effect; not only for *his act*, but for *the intent* with which he did that act. "The charge against him is, that in consequence of *a particular intent*, reaching *beyond the act done*, he has incurred a guilt beyond what is deducible merely from the act wrongfully performed."—1 Bishop's Crim. Law, § 514. The act, if not accompanied by the particular intent, is simply a misdemeanor; but, if accompanied by the particular intent, it is, by statute, a felony. *The particular intent* is essential to constitute the felony. The class to which this case belongs, is clearly distinguished from that class in which a *general* felonious intent is sufficient to constitute the offense. The doctrine of an intent in law, different from the intent in fact, although applicable to the latter class, is not applicable to the former. And in such a case as the present, the defendant ought not to be convicted of the felony, unless his intent in fact was the same that is laid in the indictment. Whether he had that intent, at the time of the alleged assault, is a question of fact for the jury to decide; and in deciding that question, "the jury ought to act upon those presumptions which are recognized by the law, so far as they are applicable, and their own judgment and experience, as applied to all the circumstances in evidence."

The burthen of proving the intent, as well as the other facts which constitute the felony, is upon the State. The law presumes the defendant innocent of the felony, unless *the whole evidence* in the case satisfies the jury that he made the assault with the particular intent alleged in the indictment. And in a case like this, any charge is erroneous, which *selects* from the mass of evidence in the case, *a portion only* of the facts disclosed by the testimony, and declares that, if the facts thus selected are proved, "the law presumes that the act was malicious," and that "he intended to kill." Such a charge takes away from the defendant the presumption of innocence, upon *the selected facts only;* whereas, according to law, that presumption cannot be taken away, except by a conviction of his

guilt produced on the minds of the jury by *the whole evidence.*
Such a charge loses sight of the distinction, in a criminal case,
between a *prima facie* case, and the changing of the burthen
of proof; and actually shifts the burthen of proof, by the effect
which it imputes to the *selected facts.* In this respect, if in no
other, the charge of the court in the present case violates the
law. The last sentence of the charge does not cure that error;
because, by the hypothesis of the preceding part of the charge,
*the court had broken down the presumption of innocence, and
shifted the burthen of proof, before* the last sentence of the charge
referred the questions of malice and intent to the jury, upon
the whole evidence. In a criminal case, the establishment of
a *prima facie* case does not, as in a civil case, take away from
the defendant the presumption of innocence, or change the
burthen of proof. A solid reason for the distinction is, the
well known difference in *the measure of proof* in the two classes
of cases. In a civil case, the plaintiff is not required to prove,
beyond all reasonable doubt, the facts on which he relies for
a recovery; and therefore, when he establishes a *prima facie*
case, the burthen of proof is thereby shifted, and the *prima
facie* case so established entitles him to recover, unless it is
*destroyed by proof* from the other party. But in a criminal
case, the State is required to prove, beyond all reasonable
doubt, the facts which constitute the offense. The establish-
ment, therefore, of a *prima facie* case merely, does not *take
away* the presumption of innocence from the defendant, but
leaves that presumption to operate, in connection with, or in
aid of, any proofs offered by him to rebut or *impair* the *prima
facie* case thus made out by the State. A circumstance, *aided
by that presumption,* may so far rebut or *impair the prima facie*
case, as to render a conviction upon it improper.—Common-
wealth v. Kimball, 24 Pick. Rep. 336; Commonwealth v.
Dana, 2 Metc. Rep. 340 ; 2 Starkie on Ev. (edition of 1826,)
738–744, title "Intention"; 1 Bishop's Criminal Law, § 514,
and the cases cited in the notes to that section; Burns v. The
State, 8 Ala. R. 313 ; Moore v. The State, 18 Ala. R. 532;
Scitz v. The State, 23 Ala. R. 42; The State v. Jefferson,
3 Harrington's Rep. 571; Reg. v. Cruse, 8 Car. & Payne,
541; Oliver v. The State, 17 Ala. R. 587, and authorities
cited on page 597 in that case; Henry v. Patrick, 1 Dev.

& Batt. R. 358; Best on Presumptions, 176, § 128; The State v. Ormond, 1 Dev. & Bat. 119; The State v. Will, a slave, *ib.* 121.

If the charges asked by the defendant had been given, they would have imposed upon the jury a duty which the law did not impose on them in this case—the duty of determining whether the defendant would have been guilty of murder in the first degree, if the death of Tiller had resulted from the assault. The inquiries of the jury should be confined to the issue in the case. The issue in this case was, whether the defendant unlawfully, and with malice aforethought, assaulted Tiller, with intent to murder him. The burthen of proof was on the State. If the defendant had asked the court to charge, that proof of an intent *to kill* merely, was not sufficient proof of the intent *to murder;* or that proof of an intent to wound, or maim merely, was not sufficient proof of the intent to murder, the charge should have been given.—The State v. Burns, 8 Ala. R. 313; Scitz v. The State, 23 Ala. R. 42; Moore v. The State, 18 Ala. R. 532, and other authorities cited *supra.* But the court was not *bound,* at the defendant's request, to charge the jury, that they could not find the defendant guilty of the felony, without first coming to the conclusion that, *if he had killed* Tiller by the alleged assault, he would have been guilty of murder in the first degree, or of "a willful, deliberate, malicious, *and* premeditated killing." No actual killing was alleged, or proved, and the court was not therefore *bound* to charge anything as to an actual killing. If the defendant made an unlawful assault on Tiller, with malice, and with an actual intent to murder him, he is guilty of the felony; otherwise, he is not guilty of the felony.

For the error in admitting the evidence of the threat to kill Mitchell, and the error in the charge of the court, the judgment is reversed, and the cause remanded. The usual order must be here entered, directing that the defendant be remanded to the custody of the proper officer in Chambers county, there to remain until discharged by due course of law ; for which, see a precedent at the conclusion of the opinion in Spencer v. The State, 20 Ala. R. 24.