[Meredith v. The State.]

# Meredith *v.* The State.

*Indictment for Assault with Intent to Murder.*

| 60 | 441 |
| 94 | 90 |
| 60 | 441 |
| 98 | 31 |
| 60 | 441 |
| 102 | 102 |

| 60 | 441 |
| 124 | 43 |

| 60 | 441 |
| 128 | 31 |
| 60 | 441 |
| 142 | 294 |

1. *Assault with intent to murder; constituents of offense.*—An assault with intent to murder, though made a felony by statute, is a common-law offense, the necessary ingredients of which are unchanged by the statute increasing the punishment: an intentional attempt by violence, without legal excuse or provocation, to do an injury to the person of another, accompanied by facts and circumstances indicating an intent to take his life, constitutes the offense.

2. *Same; intent.*—It is not necessary to prove a specific intent, as contra-distinguished from an intent to be implied by the jury from the attendant circumstances: as in cases of murder, the intent must, of necessity, generally be inferred by the jury from the character of the assault, the use of a deadly weapon, and the absence of excusing or palliating circumstances.

3. *Same.*—Whether the intended offense, if consummated, would be murder. in the first or in the second degree, is an immaterial inquiry, since there were no degrees in murder at common law; and the court may properly refuse a charge which requires the jury to determine that question.

From the Circuit Court of Colbert.

Tried before the Hon. W. B. Wood.

The indictment in this case, which contained but a single count, charged that the defendant, Henry Meredith, "unlawfully, and with malice aforesaid, assaulted Sam Greenhill with a knife, with intent to murder him." The defendant pleaded not guilty, was convicted, and sentenced to imprisonment in the penitentiary for the term of three years. "On the trial," as the bill of exceptions states, "the State swore three witnesses, all colored men, and put them under the rule, namely, Sam Greenhill, the prosecutor, Bob Greenhill, and one West. Sam Greenhill testified, that the defendant, who was also a colored man, came to the house of Bob Greenhill, who was the father-in-law of witness, on the Mhoon place in said county, and stayed all night; that he (witness) was acquainted with defendant before that night, and there had never been the slightest difficulty between them; that witness lived near his said father-in-law, and had a shoe-maker's shop in one room of his house; that in the morning, after having stayed all night, defendant asked Bob Greenhill what his bill was, and was told that it was fifty cents; that he said he had no change, but would pay it if he could change a twenty-dollar bill; that witness, at the request of Bob Greenhill, took out $19.50 to change said bill with, and started out of the shop, with the money in one hand, and his shoe-knife with the other, but, as he got to the door, turned,

and threw his knife back into the shop, and walked out, with the money in his right hand; that without an angry word being spoken between him and defendant, and without any quarrel, defendant sprang at him with an open knife, and cut him severely on the side several times, and also on the head; that the wounds were severe, and came near proving fatal; that he caught the defendant, threw him down, and bit him on the face and neck, but inflicted no other wounds on him; that defendant got away from him, and ran off, and witness and others pursued him, but did not catch him; that afterwards, on the same day, the defendant was seen passing through the field, and was arrested, and sent to jail. The witness said that, at the time of said assault, he had no knife, or other weapon, in his hand, or on his person; and that this occurred in said county, on the —— day of ——, 1877. The State having here rested, the defendant introduced as a witness one Williams, a white man, who was the jailor of the county, and who testified that, when the defendant was brought to the jail, the day after the difficulty, his clothes were torn and very bloody, his coat had a small cut in the left shoulder, and he had a cut or two on his hand; and that his face and neck had been bitten. Defendant then introduced Bob Greenhill as a witness, who testified that he was the father-in-law of the prosecutor; that the defendant stayed all night at his house; that he told defendant, the next morning, he charged him fifty cents for it; that the defendant told him to go to Cherokee, and he would pay the amount in sugar; that witness told him he could not go; that defendant said he had a twenty-dollar bill, and would pay him if he could change it; that witness could not change it, and asked Sam Greenhill to do so; that Sam Greenhill got out the change, but defendant did not produce the twenty-dollar bill; that a stiff argument, or debate, got up between him, defendant, and Sam Greenhill, about the night's lodging and the payment of the fifty cents, and at length grew warm between defendant and Sam Greenhill; that he, witness, tried to allay it; that Sam said he would have the money out of the defendant, and came to the door of the shop with the change in one hand and his shoe-knife in the other, but turned, and threw his knife back into the shop; that he, witness, then turned off, and walked to a wagon that was waiting for him, and left the defendant and Sam still debating about the half-dollar; that he did not see the fighting, having gone some distance, but he came back when his attention was called to it, and defendant ran off, leaving his hat; that Sam was cut severely in several places with a knife; that the defendant was arrested soon afterwards, as he was

passing through the field, and sent to jail; that witness helped to arrest him, and he was arrested without any violence whatever.

" This being substantially all the evidence in the case, the court charged the jury as follows: '1. To make out this case, it devolves on the State to prove, and the jury must, from the evidence, believe two things: first, an assault by the defendant upon the person of the prosecutor, Sam Greenhill; second, that the assault was made with the intent to murder him. 2. It must be shown that it was the intention of the defendant to murder the person assaulted at the time. The intent may be shown by proof of the character, manner, and violence of the assault, the weapon used, and the declarations of the defendant at the time, or any previous threats made by him. 3. The criminal intent is the essence of the offense. The jury must believe, from the evidence, that the defendant did assault, and with intent to murder, the person named in the indictment, to find him guilty. If these facts are not established by proof, or reasonable inference from the proof, he is not guilty, and you will so find your verdict.'"

The defendant did not except to any one of these charges, but requested several additional charges, which were in writing, and of which the court refused the following:

" 2. If the jury believe, from the evidence, that the defendant and Sam Greenhill got into a quarrel, with reference to the payment of a half-dollar claimed of the defendant for his night's lodging, and got into a fight, and cut each other with knives, the defendant is not guilty of an assault with intent to murder said Greenhill, within the meaning of the statute.

" 3. Malice is an essential ingredient of the offense of an assault with intent to murder; and if the jury believe from the evidence that, on the morning the difficulty occurred, the defendant and Sam Greenhill got into a sudden quarrel, and fought, and, in the heat of passion, cut each other with knives, the defendant is not guilty as charged in the indictment.

" 4. In this offense, the intent to murder must be proved, and it is not to be inferred from the act done, as malice sometimes is, and the specific intent to murder must be proved.

" 5. The specific intent to murder must be proved; and to prove an intent to kill, or to wound, or to maim, is not sufficient.

" 6. To constitute an assault with intent to murder, the jury must find that, if death had ensued, it would have been

murder in the first degree under the statute; because it is only murder in that degree that a premeditated design to effect the death of some one is requisite, and nothing less than that premeditated design can amount to an intent to murder.

" 8. To constitute the offense with which the defendant is charged, there must exist in. the mind of the defendant, at the time of the assault, the same sort of malice that is required in the statutory offense of murder in the first degree.

" 9. The sort of malice that the jury must find, from the evidence, existed in the mind of the defendant at the time of the assault, must have been willful, deliberate, malicious, and premeditated; or committed in the perpetration of, or attempt to perpetrate arson, rape, robbery, or burglary; or committed from a premeditated design unlawfully and maliciously to effect the death of some other human being than Sam Greenhill; or committed by an act greatly dangerous to the lives of others, and evidencing a depraved mind regardless of human life, although without any preconceived purpose to deprive any particular person of life; and unless such malice is proved, the defendant is not guilty of an assault with intent to murder.

"10. In order to make out the offense with which the defendant is charged, it is necessary for the State to show by proof that the assault was made under such circumstances that, if death had ensued, it would have been murder.

"11. Where two men get into a sudden quarrel, without previous malice, and fight; and one of them uses a pocket-knife, and the other a shoe-knife; and in the fight they cut each other; neither is guilty of an assault with intent to murder the other, within the meaning of the statute.

"14. If the proof shows that there was no malice prepense between the defendant and Sam Greenhill—that they were friendly, and had a sudden quarrel, and got into a fight, and, in the heat of passion, the defendant cut Sam Greenhill with a pocket-knife—then he is not guilty of an assault with intent to murder, within the meaning of the statute."

These charges, to the refusal of which severally exceptions were reserved by the defendant, are the only matters here presented for revision.

Thos. H. Jackson, James Jackson, and J. B. Moore, for the prisoner.—1. When there is the least evidence tending to show an exculpatory fact, it is error in the court to refuse to submit it to the jury. There was evidence showing that the defendant and the prosecutor were friendly, and fought on sudden quarrel; and the proof tends strongly to show that

[Meredith v. The State.]

the prosecutor was the aggressor. His testimony is contradicted in material points by other witnesses, and is in itself improbable. The verdict of the jury is evidently founded on the testimony of the prosecutor alone, the refusal of the charges asked in effect excluding the other evidence from their consideration. 2. The meaning of the word *malice* is frequently misunderstood, being construed to mean passion only. In the offense charged here, the same sort of malice must be proved as is required to make out murder in the first degree. The intent constitutes the offense, and it must be proved: it can not be inferred from the act done.— *Ogletree v. The State*, 28 Ala. 703 ; *Scitz v. The State*, 23 Ala. 42 ; 18 Ala. 532 ; 3 Harring. 571 ; 27 Maine, 468 ; 2 Minn. 123 ; 12 Cushing, 615 ; *Mooney v. The State*, 33 Ala. 420. That the 14th charge ought to have been given, see *Allen v. The State*, 52 Ala. 391.

JOHN W. A. SANFORD, Attorney-General, for the State.—The 4th charge was calculated to mislead the jury.—*Allen v. The State*, 52 Ala. 391. The 6th charge was properly refused, on the authority of the case of *Ogletree v. The State*, 28 Ala. 693. The other charges were abstract, and were properly refused for that reason.

BRICKELL, C. J.—An assault with intent to murder is not a statutory, but a common-law offense. The statute, without adding to, or diminishing the elements of the offense, as it was known to the common law, by the severer punishment it inflicts, converts it from a high misdemeanor into a felony. No other facts need be proved, than such as were essential to be proved at common law. An assault, an intentional attempt by violence, without legal excuse, and without sufficient provocation, to do an injury to the person of another, accompanied by facts and circumstances indicative of an intent to take life, constitutes the offense. The intent most often must, of necessity, be inferred from the character of the assault, the want or the use of a deadly weapon, and the presence or absence of excusing or palliating facts and circumstances. If a man, in shooting distance of another, raises a gun, takes aim, and fires, and the ball enters the person of the other, a jury would be authorized from these facts, if the evidence did not show that he was excusable, or did not show palliating circumstances, or that his intent was to maim, or to wound, to infer that his intent was to murder. A man must be taken to intend that which he does, or which is the immediate or necessary consequence of his act.—2 Stark. Ev. 738 ; *Hadley v. State*, at last term. So, in all cases

of an unprovoked or inexcusable assault (and when we say unprovoked, we use the term in its legal sense—a want of that degree of provocation, which, if death ensued, would reduce the killing to manslaughter), endangering human life, the intent to murder, the aggravating quality of the offense, may be inferred by the jury from the assault; as in murder, if a man attacks another with a dangerous weapon, and kills him, no sufficient provocation or excuse appearing, the law presumes malice from the act. There was no error in refusing the fourth instruction requested by the prisoner.

Nor was there error in refusing the several instructions, that a specific intent to murder the prosecutor must be proved, there being no evidence of an intent to take the life of any other person. They were calculated to mislead the jury; and if it was intended to assert that an express intent, as contradistinguished from an intent which may be inferred or presumed from the circumstances, must be proved, the proposition is erroneous.—*Moore v. State*, 18 Ala. 432; *Ogletree v. State*, 28 Ala. 693; *Allen v. State*, 52 Ala. 391. It was settled in this latter case,—and we cannot depart from its conclusions,—that the court may refuse charges which devolve on the jury the necessity of inquiring and determining whether, if death had ensued from the assault, the defendant would have been guilty of murder in the first degree. Such instructions are calculated to mislead and confuse a jury, and are essentially erroneous in point of law. The offense is complete, if there is an assault, with intent to murder the person named in the indictment, whether the attendant facts and circumstances would, if death ensued, elevate it to murder in the first, or reduce it to murder in the second degree. As we have already said, the offense is a common-law, and not a statutory offense; and at common law, there are no degrees in murder. These are of statutory creation, and are intended, not to alter or change the essential and distinguishing characteristics of murder as known and defined at common law, but to adapt punishment to the degree of the wickedness of design and malignity of heart each particular case may develop. Every malicious deprivation of human life was at common law, and is under the statute, murder. The only difference is in the punishment inflicted, which is graduated to the degree and malignity of the offense. It is enough to constitute the offense of assault with intent to murder, that there exists malice, which is the element of murder in either degree. If it exists in its most malignant form, as it is by statute made an essential ingredient of murder in the first degree, then the offense is more aggravated, deserving higher punishment, than would be in-

[Washington v. Parker.]

flicted if it exists without such evidence of malignity and depravity. But, if there is an assault endangering life, in the absence of facts excusing it, or of sufficient provocation, and it is directed against the particular individual named in the indictment, the offense is complete.—*People v. Scott*, 6 Mich. 287.

The remaining instructions were also calculated to mislead the jury, and were properly refused. If appropriate to any phase of the evidence, the court would have instructed the jury that an intent to kill would not constitute the aggravated offense charged in the indictment, and would, so far as necessary, have distinguished between murder and manslaughter. This was not the scope of the instructions prayed, but, in effect, the court was asked to say, if the combat was sudden, without evidence of previous malice, the defendant was not guilty, though he may have been the aggressor, and in the course of the combat attempted to kill the prosecutor.

We find no error in the record, and the judgment is affirmed.