[Walls v. The State.]

# Walls *v.* The State.

*Indictment for Assault with Intent to Murder.*

1. *Assault with intent to murder; proof of intent.*—An intent to take life is an essential element of the statutory felony, assault with intent to murder (Code, § 3751), and must be proved to the satisfaction of the jury; but, like the malicious intent in murder, it may be inferred by them from the character of the assault, the use of a deadly weapon, and the other attendant circumstances. (*Smith v. State,* 88 Ala. 23, explained and qualified.)

2. *Same; charges to jury.*—On a prosecution for an assault with intent to murder, charges requested, which require an acquittal of the felony, unless the jury find from all the evidence that the defendant intended to take the life of the person assaulted, should always be given; and no charge should be given which would authorize a conviction without satisfactory proof of the existence of such intent, or on any postulated facts which ignored it; but a charge requested which adds other words or matter, by way of particularizing the necessary intent—as, that it must be *positive,* or *deliberate,* or *actual,* or *specific, etc.*—tends to mislead the jury, and is properly refused.

FROM the Circuit Court of Tallapoosa.

Tried before the Hon. JAS. R. DOWDELL.

The indictment in this case charged that the defendant, Jere Walls, "unlawfully and with malice aforethought did assault W. D. Stroud, with the intent to murder him." On the trial, as the bill of exceptions shows, the prosecuter testified that, one morning while he was in the blacksmith shop of one Leonard, *striking* for a young man whom he had sent off on an errand, the defendant came in behind him, rushed on him with an open knife in his hand, declaring with an oath "I am going to kill you," and inflicted a severe wound with the knife before he could defend himself; and his testimony was corroborated by Leonard, who was also a witness for the State. The defendant testified, in his own behalf, that Stroud first assaulted him; and his mother and brother testified to threats made by Stroud against him, and corroborated his own testimony as to the assault. On this evidence, the court gave the following charges to the jury, requested in writing by the State, the defendant duly excepting to each of them:

(1.) "An actual intention to take the life of the person assaulted is not a necessary ingredient of an assault with intent to murder; and if the jury believe from the evidence, beyond a reasonable doubt, that the defendant unlawfully and

[Walls v. The State.]

maliciously inflicted a serious wound on W. D. Stroud, from which death would be likely to follow in the natural course of events, then they must find him guilty as charged."

(2.) "If the jury believe from the evidence, beyond a reasonable doubt, that the defendant, intentionally, unlawfully, and maliciously inflicted a wound on W. D. Stroud, which would, in the natural course of events, be likely to cause his death ; then the defendant is guilty as charged in the indictment, although they may believe from the evidence that he had no actual intention to take the life of said Stroud."

(3.) "If the jury believe from the evidence, beyond a reasonable doubt, that the defendant assaulted W. D. Stroud with intent to do him grievous bodily harm, accompanied with ability to effect it, and without legal excuse, or sufficient provocation ; then he is guilty as charged in the indictment, although the jury may believe that he had no actual intention to take the life of said Stroud."

THOS. L. BULGER, for appellant.

WM. L. MARTIN, Attorney-General, for the State.

McCLELLAN, J.—Questions as to the correctness of instruction given or refused to be given to juries, in respect to the intent necessary in the offense of assault with intent to murder, and the proof of it, have been several times passed on by this court ; and we are aware that the profession are either not agreed as to the effect of these decisions, or are inclined to the view that the later adjudications emasculate the doctrine that an intent to take life is an essential element of the crime. We do not understand that it has ever been the purpose of this court to hold that an intention on the part of the person making the assault to take life is not a necessary factor in the offense denounced by the statute. The existence of such purpose is, indeed, the sole predicate for the increased ignominy and punishment meted out to this offense, beyond that visited upon the mere act of the defendant. It is this mental condition, taken in connection with the substantive act, which converts the thing done from a misdemeanor into a felony, and replaces the lighter punishment, the less degradation, and the exemption from civil disabilities of the one, with the heavier and more ignominious punishment and loss of citizenship of the other. Surely a criminal factor, which is the basis of such results, must find lodgment in the averment and proof of its existence, before the results can ensue in any enlightened system of jurisprudence. The confusion on the point has

grown up, it would seem, from certain expressions in opinions handed down here in passing upon the language of charges requested for the defendants in the courts below. These expressions were, perhaps, unfortunate, and certainly might have been more carefully guarded, though, when considered with respect to the cases to which they were applied, it can not be fairly said that they are inconsistent with a necessity for proof of an intention to take life. They were employed in each case, as will appear from critical examination, in condemnation of charges, the effect of which was to mislead the jury into requiring *something more* than proof of such intention, or other and more direct proof of the intention than was supplied by the circumstances of the act done, though the evidence thus afforded might be entirely satisfactory, or proof of some *particular kind* of intention to kill, as that it was *positive*, or *deliberate*, or *specific*, &c. &c.; and not as declarations that such intention need not be found by the jury to exist.

Thus, in *Moore v. State*, 18 Ala. 532, it is said: "On the trial below, the prisoner's counsel asked the court to charge the jury, that they could not find the prisoner guilty, unless they found that he had in his mind, at the time of the commission of the assault, a positive intention to commit murder. This charge, we think, the court very properly refused, as it was well calculated to mislead the jury. The statute does not use the word *positive* as qualifying the intent; and in so far as it may be construed to mean an express intent, as contradistinguished from an intent implied or inferred from the circumstances of the case, by so much it would be erroneous." And so in *Allen v. State*, 52 Ala. 391, charges requiring proof of a deliberate, specific intention to murder, were held both misleading, and affirmatively erroneous, Chief Justice BRICKELL observing; "No such words are used in the statute descriptive of the criminal intent. An intent to murder, whether deliberate or formed on the instant; whether specific or general, if directed against the person charged in the indictment to have been assaulted, is the criminal intent. It is difficult to conceive of a charge which has a more direct tendency to mislead the jury, than a charge of this character." The fault here found was manifestly not to the requisition of proof of an intent to murder made by the charge, but to the *character* of that intent as being deliberate and specific, terms which it was said tended to mislead the jury into looking elsewhere than to the circumstances of the assault for evidence of the purpose which actuated it, and into requiring that evidence to be of something more than an intent to murder directed against the party charged to have been assaulted.

[Walls v. The State.]

The doctrine of this case was elaborated and re-affirmed in the subsequent case of *Meredith v. State,* 60 Ala. 441, and the idea that the essential intent must generally be such only as is inferrible from the circumstances of the assault, was there emphasized.   Of similar import, and proceeding on like considerations, is the case of *Lane v. State,* 85 Ala. 11, where it is held that charges to the effect that the intent to murder can not be implied as matter of law, but must be proved as matter of fact, and that an actual intent to kill is a necessary ingredient of the offense, are bad; not because these propositions are unsound, abstractly considered, but because, when addressed to the minds of laymen, they tended to mislead into a denial of the probative force which should be accorded inferences to be drawn from the manner and means of the assault, and into a demand for proof of an intent as a substantive fact, dissociated with the circumstances of the act.

This brings us to the case of *Smith v. State,* 88 Ala. 23, some expressions in which have, it appears, given rise to most of the confusion now prevalent on the subject, and naturally so, it is to be admitted, unless they are to be limited and controlled by the whole text of the opinion.   These expressions are the following: "Malice is an essential ingredient; and the expression that a wrongful act, and the specific intent to murder, must concur, as used in the law-books in defining the crime, is merely intended to distinguish it from that class of cases in which a general felonious intent is sufficient.   The specific intent to take life is not essential.   An assault with intent to do grievous harm to the person of another, accompanied with ability to effect it, without legal excuse or sufficient provocation, constitutes the offense."   If these declarations stood alone, they could not be held to mean other than that an intention to take life is not a necessary ingredient of the crime.   They are, however, made with reference to a charge that a specific intent must be proved, which, according to all the cases, is misleading and erroneous; and they are followed by the further declaration, that "the particular intent may be inferred, as the specific malicious intent in murder, from the character of the assault, the use of a deadly weapon, and the absence of excusatory facts and circumstances."   While the phrase, that the specific intent to murder must be alleged and satisfactorily proved, may be sufficiently accurate and definite in defining the offense; yet, when used in a charge, there being no evidence of an intent to take the life of, or do bodily harm to, any person other than the one named in the indictment, it renders the charge susceptible of two constructions, one of which is, that an express or positive intent to murder

the particular person, as contradistinguished from an intent inferred or presumed from the circumstances, must be proved. And the charge was held to have been well refused, not because it was not necessary to prove an intent to murder, but because it required proof of a *specific* intent, between which and the only essential intent a distinction had been drawn in the earlier cases of *Allen* and *Meredith;* and because it was susceptible of an interpretation which would have required the jury to find the intent, if at all, outside of the facts attending the assault. The expressions quoted first above, therefore, when read as a part of the whole opinion, the meaning being shaded and limited by the context, may well be construed as holding, in line with the earlier cases, that no specific intent, as distinguished from that inferrible from the circumstances, is essential; and that if the facts of the assault are such as to convince the jury beyond a reasonable doubt of the existence of an intention, entertained at the moment of the act, on the part of the defendant, to take the life of a person assaulted, the circumstances being of that character as, had death ensued, the crime would have been murder in either degree, they should convict of the aggravated and felonious assault, without other evidence of the intent, or any evidence of other intent than that so appearing from the defendant's own acts. This is the law as laid down in all the cases cited and those following, and we re-affirm it.—*Ogletree v. State,* 28 Ala. 693; *Simpson v. State,* 59 Ala. 1; *Smith v. State,* 83 Ala. 26.

Instructions, therefore, requested by a defendant, which require an acquittal of the felony, unless the jury find from all the evidence in the case that he intended to take the life of the person alleged to have been assaulted, should always be given. If to this form of instruction is added other matter by way of particularizing the necessary intent, as that it must be "positive," or "deliberate," or "actual," or "specific," &c., it may well be refused; not because the intent need not be, as matter of abstract law, in a sense positive, deliberate, actual and specific, but on the ground that the use of these descriptives involves a tendency to mislead the jury. On the other hand, no charge should be given which would authorize a conviction without proof, satisfactory to the jury, of the existence of an intention to take life, or which would require a conviction on any postulation of facts, although the jury may believe, these facts to the contrary notwithstanding, that the defendant had no actual intention to take the life of the party assaulted, or which declares that no actual intention to take life is necessary. Of this sort were the charges given for the State in the case at bar. They are more than misleading. They are

[Wims v. The State.]

erroneous. And in giving them, the trial court fell into error, which is fatal to the judgment rendered.

It is reversed, and the cause remanded.

*Indictment for Assault with Intent to Murder.*