# Horn *v.* The State.

*Indictment for Assault with Intent to Murder.*

98.   23
103    7

98    23
106   276
109    54

98    23
117   128

98    23
124   13
125   109

1. *Change of venue; appeal.*—Where an application for a change of venue, supported by a strong showing, is denied by tne Circuit Judge upon a counter-showing of many affidavits of persons residing in different precincts of the county, that passions had cooled, and that there was a determination that the accused should have a fair trial, this court, not being satisfied that the judge below erred, holds, that the defendant, on appeal, can take nothing on this alleged ground of error.

2. *Interpreter for unintelligle witness.*—There is no error in the employment by the court, of a sworn interpreter, to interpret the testimony of a witness who cannot speak the English language intelligibly to the jury.

3. *Evidence of conversation with accused*—A witness may be asked about a conversation had with accused immediately before he entered into a difficulty,—when the conversation tended to prove that the accused contemplated violence on the person he is charged to have assaulted.

4. *Indictment for greater offense embraces all less offenses included under it*—An indictment charging an assault with malice aforethought, and with intent to murder, by operation of law, charges assault and battery and simple assault; charges, therefore, asked for defendant, which claimed an acquittal if there was a failure to prove malice aforethought, were rightly refused.

5. *Misleading charge*—The charge that: "If the jury believe from the evidence that Paul Horn did not intend, at the moment he fired the shot, to murder Isaac Rosenberg, and no other person, they must acquit the defendant," is calculated to mislead, and was rightly refused.

6. *Same; invading province of jury.*—The followihg charge is misleading, and invades the province of the jury: "The testimony of a witness for the prosecution who is shown to be unworthy of credit, is not sufficient to justify a conviction without corroborating evidence; and such corroborating evidence, to avail anything, must be a fact tending to show the guilt of the defendant," and, is properly refused

[Horn v. The State.]

7. *Charges asked in a lump.*—Charges asked in a lump, and refused in a lump, furnish no ground for reversal, unless each one of said charges is free from error.

8. *Proper charge* —A charge for the defendant, which asserted that: "the facts must raise the presumption of intent to murder; and, if the jury find that the State has failed in this, then they must acquit the defendant of an assault with intent to murder," should have been given, and its refusal is a reversible error.

FROM Marengo Circuit Court.

Tried before the Hon. JAMES T. JONES.

The appellant was indicted for an assault with intent to murder Isaac Rosenberg, and was tried and convicted at the Spring Term 1893. An application was made for a change of venue, in which, it was stated substantially, that the person upon whom the assault was made, had many friends in Faunsdale, and in Demopolis, Uniontown and neighboring places, who had shown great diligence, prejudice and malice in the prosecution of the defendant; that the people of the surrounding country were, and had been, for a long time, greatly prejudiced against the defendant, and that this prejudice extended and existed throughout the whole county, that a great many people had expressed themselves as being very hostile towards the defendant; that a correspondent of the Mobile Register, a newspaper published in Mobile, writing from Faunsdale, had stated in a communication to that paper (attaching copy) that the community of Faunsdale were very much infuriated against the defendant; that a great prejudice and excitement against the defendant existed throughout the county, as is shown by exhibits attached, showing printed extracts circulated in the county, from the *New York Evening Post, The Linden Reporter*, and *The Central Express* (of Demopolis), denouncing the defendant as "a cowardly fiend," "a drunken bully," "a cowardly cur," "a would-be-murderer," &c.; that the minds of the people of Marengo county were so excited, and prejudiced against him, that the defendant had to leave the county, and had no opportunity to counteract the state of feeling that had been aroused against him; that for the reasons set forth, the defendant could not have a fair and impartial trial in said county. This application was sworn to. In support of it, the defendant filed affidavits from many residents of the county, who testified: "that they are resident citizens of Marengo county; that they are well acquainted with the people thereof; that they believe that the minds of the people of said county are so prejudiced and excited against Paul Horn, the defendant, that he cannot get a fair and impartial trial in said county of Marengo." The

State filed a large number of counter-affidavits, and moved the court to dismiss and disallow the application for a change of venue, because there was no good and legal cause for such change of venue. In support of this motion it was shown by the affidavits of many citizens from various portions of the county that: "the newspaper articles referred to in the application for change of venue, had no prejudicial influence or weight against a fair and impartial trial of the defendant in this cause; that immediately after the commission of the alleged offense there was some excitement over this matter, but in a few weeks thereafter this excitement entirely subsided, and it is no v, nearly the unanimous sentiment and desire that defendant should have a fair, impartial and unprejudiced trial. In fact there has been a tendency towards generating sympathy for defendant's mother and brothers, and prejudice against the person said to have been assaulted, on account of his nationality and vocation. We have been residents of said county, for many years, and are acquainted with a large majority of the residents of our respective beats, and their minds, feelings and sentiments in reference to this cause, and state as a fact, that the wish, desire and sentiment of said residents are, that there should be a fair and impartial trial of this cause, and that justice only should be meeted out, and that if the defendant is guilty he should be convicted; if innocent, that he should be acquitted. We state as a fact that defendant can have a fair and impartial trial in this, Marengo county."

The motion to dismiss the application was granted by the State, and the defendant duly excepted.

The State examined as a witness one Isaac Rosenberg, a Russian emigrant of Jewish extraction, the prosecutor, who spoke English so imperfectly that some of the jurors announced that they could not understand the witness, whereupon the court ruled that an interpreter was necessary, and had one, R. M. Schwarz, sworn as an interpreter against the objection of the defendant, who then and there excepted. The witness Rosenberg testified that defendant came into his, witness's store, with his whip in his hand, asked witness something about five dollars, and began immediately to whip him with the whip; that witness holloed and ran, when defendant shot him in the back; that witness fell and ran off on all fours; that witness said nothing to defendant, and offered him no resistance; that witness's wife was present, and also ran, and that the second shot was fired at her. The State examined Louis Rosenberg, son of Isaac Rosenberg, whose testimony tended to corroborate that of Isaac

Rosenberg. The State introduced, among others, a witness, Mack Walker, who testified that he saw the defendant in Faunsdale on Saturday afternoon, a short time prior to the difficulty. The State then asked said witness the question : "Did you have any conversation with the defendant?" To which the witness replied, "I did." The State then asked : "What was that conversation?" To which the defendant objected on the ground that it was illegal, irrelevant, too broad, and that a proper predicate had not been laid. The court overruled the objection, and the defendant excepted. The witness answered that, "defendant told me that those Jews had five dollars of his money, that he was going down there after it, and was going to have it or give them a frailing." The defendant moved to exclude this answer, the court overruled the motion, and the defendant excepted.

The State introduced other witnesses whose evidence tended to show that the defendant drove into Faunsdale in his buggy on the Saturday afternoon of the difficulty, that he got out, leaving a negro to hold his horses, took his buggy whip with him, and went down in the direction of Rosenberg's store, that soon afterwards there was a difficulty there, two shots were fired, the defendant was seen there with a pistol in his hand, that he resisted arrest by the town marshal, and jumped in his buggy and fled—that he was afterwards captured and lodged in jail.

The defendant, testifying as a witness in his own behalf, stated that the said Isaac Rosenberg had five dollars, which he had taken from one of his (defendant's) tenants ; that he came to Faunsdale on said Saturday and went to Rosenberg's store to get his money ; that he had his buggy whip in his hand ; that he asked Rosenberg for the five dollars, when Rosenberg said that "he would die and go to hell before he would give him the five dollars," and thereupon struck defendant with an umbrella, and that he then struck said Isaac with his whip ; that Louis Rosenberg and Mrs. Rosenberg jumped on him and were beating him with umbrellas, and that Charley Tennerson was holding him by the arm ; that said Isaac ran back into the back room and was returning with a long-bladed knife ; that he reached for his pistol with his left hand and fired two shots backward over his shoulder at Isaac Rosenberg ; that he did not shoot at Mrs. Rosenberg. The defendant introduced other witnesses whose testimony tended to corroborate his statement in all its details.

Among the charges asked by the defendant were the following :

8. "If the jury believe from the evidence, that Paul Horn did not intend, at the moment he fired the shot, to murder Isaac Rosenberg, and no other person, they must acquit the defendant."

5. "The jury cannot find the defendant guilty unless they believe he had in his mind, at the time of firing the shot, the intention to murder Rosenberg."

A. "The facts must raise the presumption of the intent to murder; and if the jury find that the State has failed in this, then they must acquit the defendant of an assault with the intent to murder."

6. "If the State fail to prove beyond all reasonable doubt, that the defendant, at the time that he fired the shot at Rosenburg, did so with the intent to murder him, then the jury should find the defendant not guilty as charged in the indictment." Each of these charges was refused by the court, and defendant excepted.

This charge, numbered 1, was also asked by the defendant: "If the jury believe from the evidence that Paul Horn went to the store of Isaac Rosenberg, and that Isaac Rosenberg assaulted him, and that several persons jumped on him and were beating him, and he fired the shot at Isaac Rosenberg when Rosenberg was advancing on him, under the belief that it was necessary for his protection, then he is not guilty of an assault with intent to murder, although he might have struck Rosenberg, and got in a fight with him." This charge was refused.

The following charges were asked for the defendant:

1. The testimony of a witness for the prosecution, who is shown to be unworthy of credit, is not sufficient to justify a conviction without corroborating evidence, and such corroborating evidence, to avail anything must be a fact tending to show the guilt of the defendant."

7. "If the jury believe from the evidence that the defendant had nothing to do with the bringing on the difficulty with Rosenberg, and that he went to the storehouse of Rosenberg for the purpose of seeing about the five dollars left with him, and did so in a peaceably and gentlemanly manner, and that Rosenberg struck him with an umbrella, then the defendant had a right to repel force against force, and if he was in imminent danger of bodily harm at the hands of Isaac Rosenberg with a knife and stick, and being at the time held by Charley Tennerson, then the defendant had the right to defend himself." Both of these charges were refused by the Court, and defendant excepted.

C. K. ABRAHAMS, and PETER M. HORN, for appellant.

1. As to change of venue, cited Const. of Ala. Art. 4, Section 36 ; Code 1886, § 4485 ; *Ex parte, Banks,* 28 Ala. 28 ; 48 Ala. 180; 1 Bish. Crim.. Pro.. § 71 ; *Posey's case,* 73 Ala. 494 ; *Wolf's case,* 49 Ala. 360 ; *Ex parte Bryan,* 44 Ala. 402 ; 86 Ala. 13 ; 48 Ala. 108 ; 47 Ala. 68 ; 73 Ala. 400 ; 84 Ala. 410 ; *Hawes v. State,* 88 Ala. 37.

2. As to employment of interpreter. Code, 1886, § 2764—insisted that no necessity was shown.

3. Charges :—60 Ala. 441 ; 84 Ala. 424; 90 Ala. 622 ; 28 Ala. 693 ; 59 Ala. 1 ; 83 Ala. 26 ; 94 Ala. 19 ; 91 Ala. 10 ; *Ib.* 64 ; *Ib.* 106 ; 89 Ala. 63 ; 94 Ala. 90 ; 74 Ala. 38 ; 76 Ala. 42.

W. L. MARTIN, Attorney-General, for the State, cited 1, upon change of venue ; *Hawk v. State,* 84 Ala. 6 ; *Fallin v. State,* 86 Ala. 13 ; *Hussey v. State,* 87 Ala. 121 ; *Hawes v. State,* 88 Ala. 37.

2. Employment of interpreter : § 2764 of Code of Ala. 11 Am. & Eng. Enc. Law, 524, *note.*

3. Proof of threats of defendant : 3 Brick. Dig. 193, §§ 142-3 ; *Wims v. State,* 90 Ala. 623.

4. Charges refused : *Walls v. State,* 90 Ala. 618; *Jackson v. State,* 94 Ala. 85 ; *Meredith v. State,* 60 Ala. 441; *Tanner v. State,* 92 Ala. 1–7 ; *Jones v. State,* 97 Ala. 77 ; *Newton v. State,* 92 Ala. 33 ; 3 Brick. Dig. 193, § 136 ; § 2756 ; Rev. Code of Ala. ; Acts 1888-9, of Ala. p. 90; *Moore v. State,* 68 Ala. 360; *Nabors v. State,* 82 Ala. 8 ; *Lowe v. State,* 88 Ala. 8 ; *Ming. v. State,* 73 Ala. 1, and *Childress v. State,* 86 Ala. 77–85.

STONE, C. J.—There was an application for a change of venue in this case, and a very strong showing was made in support of it. On the other hand, a full showing was made that before the trial came off better counsels prevailed, passions had cooled, and the sentiment of the public had settled down to the determination that the accused should have a fair and impartial trial upon the evidence as it should be developed. This counter showing was supported by many affidavits of persons residing in many different precincts of the county. We have no means of knowing the character and intelligence of the several affiants, and hence can not speak of the same. The judge of the Circuit Court was on the same ground, and could inform himself in these respects. He had, therefore, much better opportunities for

[Horn v. The State.]

arriving at a conclusion on this application than we can have. He denied the motion, and we are not satisfied that he erred. This case, on this question, is not distinguishable in its legal bearings from that of *Hawes v. State*, 88 Ala. 37; and on the authority of that case we hold that appellant can take nothing on this alleged ground of error. *Hussey v. State*, 87 Ala. 121; *Seams v. State*, 84 Ala. 410.

The Circuit Court did not err in the employment of a sworn interpreter, to interpret the testimony of the prosecuting witness. Some of the jurors were unable to understand his attempt to speak the English language, and it was the Court's duty to have the testimony put in such shape, as that it could be understood by the body, whose duty it was to pronounce on the facts. Code of 1886, § 2764; 1 Whor. Ev. §§ 174, 407.

There was certainly nothing in the objection to the question propounded to the witness Walker, or to the answer he gave to that question. Their purpose and tendency were to prove the accused contemplated violence on the person he is charged to have assaulted. This was material testimony to be considered by the jury, in determining who brought on the difficulty, and also, on the inquiry of formed design, an essential element of the offense with which he was charged. *Ross v. State*, 62 Ala. 224; *Fields v. State*, 52 Ala. 348; *Ex parte Nettles*, 58 Ala. 268; *Ex parte Warrick*, 73 Ala. 57; *Mitchell v. State*, 60 Ala. 26; *Cleveland v. State*, 86 Ala. 1; *De Arman v. State*, 71 Ala. 351; *Gibson v. State*, 91 Ala. 64.

The indictment in this case, pursuing the form prescribed in our Code—form 12—charges "that Paul Horn unlawfully, and with malice aforethought, did assault Isaac Rosenberg, with intent to murder him." This indictment, while it specifically charges a felony, by operation of law charges every lesser offense included in the one charged. Hence, it charges the defendant with assault and battery and with a simple assault, in neither of which is malice aforethought an essential ingredient. *Jones v. State*, 97 Ala. 77.

Charges 8, 5 and 6 asked by defendant, claimed an acquittal of defendant, if there was a failure of proof of malice aforethought. These charges were rightly refused for the reason stated above, if for no other.

Charge No. 1, asked by defendant is too meagre in its postulates. It pretermits all inquiry of defendant's conduct anterior to the time Rosenberg is supposed to have assaulted him; and fails to hypothesize that the supposed assault from Rosenberg menaced grievous bodily harm. If one by

his conduct provokes an assault, or assault and battery on his person, which is not likely to produce death, and then, pursuant to a formed design, general or special, shoots his adversary with intent to kill him, this would be an assault with intent to murder. This charge was calculated .to mislead, and was rightly refused. 3 Brick. Dig. 111, 112, §§ 84, 85, 86.

Another charge, asked by defendant and refused, appears in the transcript before us as No. 1. It is the 6th in the series, as they appear in the bill of exceptions. Its language is, "The testimony of a witness for the prosecution, who is shown to be unworthy of credit," &c. This charge was calculated to mislead, in this, that, if given, the jury might have understood the Court as affirming, as matter of fact, that the witness was unworthy of credit. That was a question to be left to the jury. 3 Brick. Dig. 111; §§ 80, 82.

Charges asked in a lump, and refused in a lump furnish no ground for a reversal, unless each one is free from error. The defendant asked two charges at the same time, one of which we have commented on last above, and pronounced faulty. We need not consider the other. 3 Brick. Dig. 80 ,§ 41.

Defendant also asked, at one and the same time, three several charges, all written on one piece of paper ; and the presiding judge wrote across the paper, "refused," and signed his name. As shown in the record, this was a single ruling, and can not be made the subject of several exceptions. The first of these three charges assumes and states as a fact that when the defendant fired the pistol, he was "at the time held by Charley Tennerson." His own testimony tended to show such was the case, but it was not an uncontroverted fact. It should have been left to the jury, *Bain v. State*, 70 Ala. 4; *Dolan v. State*, 81 Ala. 11; *Watson v. State*, 82 Ala. 10. Charges 2 and 3 of that lot are also wanting in clearness. Each of these was rightly refused.

Charge A asked by defendant, refused by the court, and the refusal excepted to, is in the following language : " The facts must raise the presumption of intent to murder ; and if the jury find that the State has failed in this, then they must acquit the defendant of an assault with intent to murder." This charge ought to have been given. It states succinctly and clearly the controlling principle in all prosecutions for this offense. There must be an assault, and there must be an intent to take life, under circumstances which, if successful, would constitute murder. That intent, being a mental purpose, or state of the mind, is rarely, if ever,

[Carpenter v. The State.]

susceptible of direct proof. It is an inference to be drawn by the jury, from the facts testified to by the witnesses. When the proof shows that an act was done, or attempted to be done, which in the course of nature was calculated to take life, and the attendant circumstances fail to show a case of self-defense, and fail to show it was brought about by sudden passion aroused by an unprovoked, personal wrong, not less grievous than an assault; or, if the circumstances show that the accused made the attempt, pursuant to a formed design to take life, no matter how recently that design may have been formed, this is an assault with intent to murder; and if the facts which raise the presumption of such intent to take life, be proved to the jury's satisfaction beyond a reasonable doubt, it is their duty to convict. But, the facts which raise this presumption, must be proved so clearly as to leave no reasonable doubt of the intent of the prisoner to commit the murder. "A man must be taken to intend that which he does, or which is the immediate or necessary consequence of his act."—*Meredith v. State*, 60 Ala. 441; *Williams v. State*, 77 Ala. 53; *Lawrence v. The State*, 84 Ala. 424; *Walls v. State*, 90 Ala. 618.

Reversed and remanded. Let the prisoner remain in custody until discharged by due course of law.

Reversed and remanded.

