92 So.2d 435

Bobby KEAN

v.

STATE.

7 Div. 393.

Court of Appeals of Alabama.

Jan. 29, 1957.

W. M. Beck, Fort Payne, for appellant.

John Patterson, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

CATES, Judge.

On August 15, 1955 the DeKalb County grand jury indicted Bobby Kean for assaulting Harvey Spears with intent to murder. Code 1940, Title 14, Section 38, Title 15, Section 259, No. 16. He was on August 31, 1955 convicted by a jury of that charge and sentenced by the court to two years in the penitentiary.

The evidence for the State tended to show that:

The night of July 31, 1955, Harvey Spears was working at a curb market (sometimes called a "fruit stand") at or near Fort Payne, Alabama. Shortly after midnight, three "boys", Bobby Kean (appellant), Vernon Lands, and Hobart Peek, drove a car through the fruit stand driveway fast enough to make the wheels spin. Spears asked them not to drive so fast.

About three in the morning the three came back down the highway from the direction of Valley Head, stopped across the street from the fruit stand. There with Spears were Charlie ("Pap") Leath and Cecil Walker, the latter of whom was characterized by Spears as being "about drunk." Spears was sitting out front on a bench, while Pap and Cecil Walker were seated on the ice cream box. Kean, Lands, and Peek got out of their car and came across the street to the stand. Kean asked Spears what he meant when he hollered at them telling them not to drive so fast. Spears rejoined, "Go away, I don't want any trouble." The three kept standing there. Then Spears stood up. With that, Kean went over to Spears and hit him in the face. As Spears tried to strike Kean, Peek laid hold of Spears by the arm and "slung" him down. Thereupon, both of them got on him; Kean having run up and "stomped" him in the side and beat him in the face, Peek meanwhile continuing to hold him down and beat on him. Spears once managed to get up

and start off when Peek jerked him back to the ground by the hair of the head. The beating continued until Cecil Walker said he was going to get the law.

The threat of the police seems to have caused the boys to drive off, leaving Spears on the ground with a bruised face and an arm with a compound fracture just above the elbow. He stayed in the hospital five days in Gadsden where his arm was set and then two weeks at Fort Payne. He was still under the care of a physician for these injuries at the time of trial.

The defendant's evidence shows an altogether different state of facts and inferences, principally to the effect that Spears and Kean had formerly had a difficulty about a car; that Spears cursed and began to fight; that Spears's injuries were the consequence of Kean and Peek defending themselves; that if there was any kicking or stomping on Spears it was Peek's doings and not Kean's. Indeed, Kean testified in his own behalf that at no time did he hit or stomp Spears.

To support his appeal Kean specified error to reversal in (1) the admission of a statement by Vernon Lands, viz., "Bobby and Red have just killed a man"; (2) the court's refusal of a charge, 5, to the effect that the facts must raise a presumption of murder, which is verbatim for charge "A" in Horn v. State, 98 Ala. 23, 13 So. 329; (3) the court's refusal of a charge, 4, aptly adapted from charge "2" in Spigner v. State, 103 Ala. 30, 15 So. 892, wherein a charge on the use of abusive words to extenuate an assault and battery was approved agreeably to the requirements of Code 1940, Title 14, Section 37; and (4) the verdict was contrary to the great weight of the evidence and therefore defendant's motion for a new trial was due to be granted. The motion for new trial raises additional grounds, all of which we have reviewed though all need not be set forth or discussed in toto.

As to the statement of Vernon Lands, the transcript of testimony shows that David Ray Wooten, sworn in behalf of the State, testified that he was working in the Mutual gasoline station on the night of the affray; about 4:00 A.M. he saw Lands who said in substance, "Bobby and Red have just killed a man, Harvey down at the fruit stand." Lands. a witness for the defense, had denied making this statement under conditions which properly laid the predicate for contradiction. The trial judge admitted Wooten's answer for the purpose of showing the testimony of Lands could be contradictory. It was properly admissible, Lynn v. State, 37 Ala.App. 400, 69 So.2d 485. We consider the statement as material to the issues.

The defendant's requested charge 5, "The Court charges the jury that the facts must raise the presumption of murder, and if the jury find that the state has failed in this, then they must acquit the defendant of an assault with intent to murder", was taken from the Horn case, supra, and, while a correct statement of the law, its refusal cannot, under Code 1940, Title 7, Section 273, sentence 4, be cause for reversal since in our opinion the court covered the subject adequately in the oral charge, the pertinent part of which is as follows:

"An assault with intent to murder is an assault committed unlawfully, willfully and maliciously and with intent to take the life of the party assaulted. Unlawful means without legal excuse or justification. In other words, done without a legal excuse, or not justified in doing it. Willfull simply means that the Defendant must have been governed by his will, that he willed to do it, and not done by a sudden or rash act in doing something that he didn't mean to do. He must have done it willfully and not accidentally, not done so suddenly that it didn't give him time to reason, that he willed to do it, and third, it must have been done with mal-

ice. Malice is defined as a mental state or condition of one's mind which prompts him to do an unlawful act without legal excuse or justification. Those three elements must be present. Was it done unlawfully under the circumstances and without legal excuse or justification? It must have been done willfully, he wanted to do it, or he willed to do it, and third, it must have been done maliciously.

"Gentlemen of the Jury, malice—I have explained the first two words to you, unlawfully, and willfully—malice, Gentlemen, don't mean ill will, as we call it some times, done through hatred or ill will, it don't have to be. It is simply the mental state or condition of one's mind which prompts him to do an unlawful act without legal excuse or justification, taking in to consideration all of the circumstances that surrounded him at that time. It don't necessarily mean it was done through hatred or ill will, but done through malice as I have tried to explain it to you. That, Gentlemen of the Jury, is the definition of the highest offense charged in the indictment, assault with intent to murder."

■ The refusal of charge 4, from the code section, supra, and the Spigner case, is rendered abstract in a case of assault with intent to murder. See Elmore v. State, 226 Ala. 327, 146 So. 826, overruling in part Mancil v. State, 21 Ala.App. 200, 106 So. 682.

■ The remaining question raised, that the verdict was contrary to the preponderance of the evidence, can be considered only upon the narrow question as to whether or not an assault and battery with fists and feet can imply an intent to murder. The crime is defined as at common law, and hence the word "murder" requires here only proof of "intent" needful to set up a prima facie case of second degree homicide under Code 1940, Title 14, Section 314, Meredith v. State, 60 Ala. 441, i. e., malice. See Letcher v. State, 145 Ala. 669, 39 So. 922 (reported in full in Southern Reporter only). In homicide, aside from cases of the use of deadly weapons or where the presumption from their use is absent, malice vel non is for the jury, to be inferred from all the facts and circumstances. Shiflett v. State, 262 Ala. 337, 78 So.2d 805, Diamond v. State, 219 Ala. 674, 123 So. 55.

■ We can give no precise definition of the extent and degree of a conduct that would show malice. Under one aspect of the evidence the jury might have reasonably inferred that if the police had not been called the beating would have gone on until Spears had died. The character of the assault is for the jury to weigh. Kirkland v. State, 21 Ala.App. 348, 108 So. 262. If the beating would bespeak that its reasonable and probable effect would have been such as to produce death, there is that manifestation of a state of mind which we call malice. Redd v. State, 27 Ala.App. 19, 165 So. 409; Stewart v. State, Ala.App., ante, p. 497, 88 So.2d 580. We think there was sufficient evidence to support the verdict.

We have reviewed the record carefully and find it free of error. The judgment of the lower court is affirmed.

Affirmed.